it descends to the grantor's heirs, but does not pass by a conveyance. And any deed by which the original grantor, or his heirs, undertakes to transfer, assign, or grant the land, or the reversion of it, while it may be ineffectual to convey title to the grantee, does operate to put an end to the rights of the grantor. 6 Am. & Eng. Enc. Law, 904; Underhill v. Railroad Co., 20 Barb. 455; Post v. Weil, 8 Hun, 418; Washb. Real Prop. (5th Ed.) 118; Ger. Real Estate (3d Ed.); Tinkham v. Railroad Co., 53 Barb. 393–396; De Peyster v. Michael, 6 N. Y. 468, 506; Nicoll v. Railroad Co., 12 N. Y. 121; Towle v. Remsen, 70 N. Y. 305. The city (the grantor in the deed of 1848, which imposed the condition in question), by its later deed to the hospital defendant, sold, conveyed, and released the property, and all its interest therein; and this deed clearly operated to release the land from the condition. The right to re-enter for breach of condition was gone forever, and the condition has never since that time affected or restricted the hospital defendant's interest in the property.

The case was properly disposed of by the trial court. The judgment appealed from should be affirmed, with costs.

BARRETT, RUMSEY, and PATTERSON, JJ., concur. VAN BRUNT, P. J., concurs in the result.

---

## MEARNS v. CENTRAL R. CO. OF NEW JERSEY.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

CARRIERS—INJURY TO PASSENGER—QUESTION FOR JURY.

Plaintiff was a passenger upon one of defendant's vestibule trains. As it drew into the station, the conductor called out: "All out! Jersey City! Last stop!" Plaintiff, holding an umbrella and bag, then walked to the end of the car, and waited. According to his testimony, the conductor unfastened and opened the vestibule door, and plaintiff started to alight. The conductor was then facing him. The car was still in motion, but plaintiff did not know it. There was a light at the top of the steps, but it was dark outside. The motion of the car was perfectly smooth, and there was nothing to indicate to plaintiff that the car was not at rest. He held the side rail with one hand as he stepped down. As he attempted to step on the station platform, he was thrown down and run over. *Held*, that the questions of plaintiff's contributory negligence and defendant's negligence should have been submitted to the jury.

Appeal from trial term, New York county.

Action by Stephen Mearns against the Central Railroad Company of New Jersey. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Thomas P. Wickes, for appellant.

Robert Thorne, for respondent.

BARRETT, J. The plaintiff was a passenger on the defendant's railroad. The train on which he was traveling was known as the "Royal Blue Line." It was vestibuled throughout. The plaintiff

took this train at Washington, at noon, on the 20th day of December, 1894, and he reached Jersey City about 6 o'clock on the same evening. As the train was drawing into the station at Jersey City, the conductor called out: "All out! Jersey City! Last stop!" The plaintiff then took his umbrella and bag, and prepared to alight. He walked towards the front of the car, and waited, leaning against the adjoining partition, for the conductor to open the vestibule door. The conductor then reached to a bar which was across this door, and lifted it out. He thereupon pulled the door inward, thus opening it. The plaintiff thereupon stepped across the partition, and started to go down the steps of the car. He testified that at this moment the conductor was "two-thirds" facing him. It was dark outside. There was a light, however, at the top of the steps of the car, which cast its rays upon these steps, and upon the narrow exterior space. As the plaintiff descended the steps, he kept hold of the rail with his right hand, and held his umbrella and bag with the other. The train was still in motion, but the plaintiff was not aware of this fact. It appears that the movement of the train was perfectly smooth. The respondent concedes that there was no jar or jerking motion of any kind. The plaintiff looked ahead as he stepped through the vestibule door, and saw the steps, but that was all. As he took the first step, he saw the ground, but could see nothing else. He then attempted to step on the station platform. At this point he was, as he says, thrown down and run over, suffering thereby severe injuries. The conductor gave him no warning or intimation that the car had not yet stopped. Upon substantially these facts, the trial court dismissed the complaint. We think this was error.

The conductor knew, or should have known, that the car was in motion at the time he invited the plaintiff to alight. There was evidence that the conductor was facing the plaintiff, and saw that the latter was acting upon his invitation. If it was dangerous for the plaintiff to do what he was thus invited to do, it was the conductor's clear duty to check him, or at least inform him of the danger. The jury might well have found upon the evidence that the conductor neglected this duty. At all events, the question was for them.

So as to the plaintiff's freedom from contributory negligence. There was no question of his getting off a car which he knew to be in motion. The real question was whether he should have known that it was in motion. Upon the evidence, that question also was for the jury. The plaintiff certainly had a right to assume that, when the conductor said, "All out!" the train was about to come to a full stop. The respondent says that this call of the conductor was simply a preparatory notice. Admitting this to be so, the plaintiff only acted upon it as such. He did not immediately attempt to leave the car, nor in fact could he have done so, as the vestibule door was fastened. He simply prepared for his exit, and this preparation was quite leisurely. When, however, the conductor followed this preparatory notice up by opening the vestibule doors, the plaintiff naturally proceeded at once to alight. The re-

spondent contends that it was still his duty to look and see whether the train had come to a full stop. The plaintiff, on the other hand, contends that he had a right to assume that it had come to a full stop. We think that these differences should have been solved by the jury. It is true that, notwithstanding the conductor's words and acts, the plaintiff was still bound to exercise due care. Whether he did so or not was to be considered in the light of the attendant circumstances. The jury might well have found that he had, in consequence of the conductor's words and acts, full warrant for the belief that the train had come to a full stop, and that he acted upon a justifiable sense of security caused by these words and acts. The plaintiff, as we have seen, testified that he did not observe that the train was in motion; and the entire absence of jar tended to confirm the impression which had been conveyed by the opening of the vestibule door, namely, that the car was at rest. Nor would the light which shone over and from the vestibule steps necessarily have indicated even to the most careful observer that the train was still in motion. There is no evidence that there were in the neighborhood upright objects, which, as the train glided past them, would have indicated motion. It is well known that, where a gleam of light falls from a moving train upon a perfectly smooth exterior surface, the train itself frequently appears to be stationary. The stream of light naturally moves forward with the train, and gives to it a stationary effect. At all events, the inference to be drawn from the facts, and from the inferential considerations to which we have adverted, pro and con, were properly for the jury; and, as the plaintiff was nonsuited, he is entitled to the most favorable inferences deducible from the evidence. Rehberg v. Mayor, etc., 91 N. Y. 137. Under this rule, it is entirely clear that the questions of the defendant's negligence and the plaintiff's freedom from contributory negligence should not have been withdrawn from the jury.

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.