Decided 16 April; rehearing denied 13 August, 1900.

## SMITSON v. SOUTHERN PACIFIC COMPANY.

[ 60 Pac. 907.]

NEGLIGENCE OF RAILROAD—QUESTION FOR JURY—NONSUIT.

1. Plaintiff testified that, as she approached her destination at night, on defendant's train, the train stopped, and the brakeman said to her, "I will help you out with your things now;" that she followed him to the end of the car, where he held back the door while she passed out, and started down the steps; that the brakeman passed to the other side of the platform, and stood with his side towards her; and, after the car had stopped about fifteen seconds, the train suddenly started, throwing her beneath the car. Her testimony as to the train stopping about fifteen seconds before it reached the depot, and then suddenly starting, was corroborated by four witnesses. *Held*, that the evidence of the company's negligence was sufficient to take the case to the jury.

INJURY TO PASSENGER—TIME TO ALIGHT.

2. Where plaintiff testified that a train stopped fifteen seconds, and started suddenly before she had time to get off, the court cannot hold, as a matter of law, that she was negligent in not alighting in that time.

SUFFICIENCY OF EVIDENCE—CONTRADICTION BY PHYSICAL FACTS.

3. The testimony for both parties is reviewed and it is decided that the plaintiff's testimony was not sufficiently contradicted by physical facts to warrant the direction of a verdict for the defendant. If the established physical facts should conclusively show that the testimony of a witness could not be true, then it would probably be the duty of the court to reject such testimony, but such is not the case here.

CONTRIBUTORY NEGLIGENCE—COMPETENCY OF EVIDENCE.

4. Where plaintiff was injured by stepping from a train before it reached the depot, on a dark night, at a station where she had always lived, and was familiar with the surroundings, it was not error to allow the plaintiff to testify that the brakeman said he would help her to alight, from which she supposed the train was at the station when he spoke; otherwise, the jury might have inferred that she ought to have known where it was.

CROSS-EXAMINATION—FOUNDATION FOR IMPEACHMENT.

5. Where a witness, on cross-examination, made contradictory statements as to the position of the plaintiff when she fell from a train and was injured, questions as to statements made by him out of court, concerning how the accident occurred, inconsistent with his testimony in chief, were properly allowed to lay a foundation for impeachment.

DESIRED INSTRUCTIONS SHOULD BE REQUESTED.

6. If a particular instruction is desired on a given point it should be requested; counsel cannot sit by while the jury is being charged and then complain on appeal that something was omitted: *State* v. *Foot You*, 24 Or. 61, applied.

RAILROADS—TIME FOR PASSENGER TO ALIGHT.

7. An instruction that, when a passenger on a railway train arrived at his known destination, the law required the carrier to stop for a "sufficient" length of time to allow him to alight safely, was not prejudicial to defendant in not limiting the time to a "reasonable" length of time, where defendant claimed the train had not stopped when the injury occurred.

EVIDENCE JUSTIFYING INSTRUCTION.

8. An instruction that, if the train stopped before reaching the station, and plaintiff was led to believe from the words or acts of defendant's employee that it was a proper time for her to alight, and in attempting to do so she was thrown to the ground by the sudden jerk of the car or in any other manner and injured, defendant was guilty of negligence, was not erroneous, as not supported by the evidence, where the brakeman had testified that when the whistle sounded he went into the car where plaintiff was seated, and announced, "The next station is Springfield," which was plaintiff's destination.

ALLEGATIONS AND PROOFS—DUTY OF EMPLOYEE.

9. Under an allegation that plaintiff went out onto the steps of a railroad car which had stopped, intending to alight, but was thrown off by the sudden starting of the train, it is not objectionable to charge the jury that plaintiff could recover if the train was moving so slowly as to justify plaintiff in thinking it had stopped.

FUTURE MENTAL SUFFERING AS AN ELEMENT OF DAMAGES.

10. Where a person has sustained bodily injuries through the negligence of another the mental suffering that must necessarily be endured is an element of damages.

NECESSARY PHYSICAL SUFFERING AS AN ELEMENT OF DAMAGES.

11. Where plaintiff was injured by falling from the defendant's train, she is entitled to recover for the future bodily suffering occasioned by the loss of her limbs, such as the evidence shows it is reasonably certain she will be called on to endure.

COMPENSATION FOR INJURIES.

12. Where plaintiff, in falling from defendant's train, sustained an injury which necessitated the amputation of both her limbs, an instruction that, if the injury was caused through defendant's negligence, the jury should award her such sum as would compensate her for the injury, not to exceed the amount demanded, was not prejudicial to the defendant, though exact compensation may not be obtainable in such a case.

ENTIRE CHARGE MUST BE CONSIDERED.

13. All the instructions in a charge must be considered together, and if a given point is, on the whole, fairly presented, the case should not be reversed for inaccuracies in some paragraphs: *State* v. *Tarter*, 26 Or. 38; *Matlock* v. *Wheeler*, 29 Or. 64; *State* v. *Bartmess*, 33 Or. 110, applied.

INCONSISTENT INSTRUCTIONS.

14. Where the instructions given by the court of its own motion are correct expositions of the law applicable to the case, the fact that those given at the request of the defendant restrict those given by the court in some particulars, does not constitute reversible error, on the ground that the instructions are inharmonious, and it cannot be told which the jury followed in arriving at their verdict, where their finding for the plaintiff showed that they had followed those given by the court of its own motion, and also that they were not misled by the defendant's instructions.

INSTRUCTION USURPING PROVINCE OF JURY.

15. Under Hill's Ann. Laws, § 200, prohibiting the trial court from presenting the facts of a case to the jury, it was not error to instruct the jury that there was evidence for the plaintiff "to the effect" that the train came to a standstill, and that there was evidence "tending to show" that the accident occurred about 9 o'clock, as the court evidently did not attempt to state the facts to the jury, but merely called their attention to the theories of the respective parties: *Coos Bay R. R. Co.* v. *Siglin*, 34 Or 80, approved.

From Lane : J. C. FULLERTON, Judge.

This is an action by Jennie Smitson to recover damages from the Southern Pacific Co. for personal injuries.    It is alleged in the complaint, in substance, that on July 29, 1897, plaintiff was a passenger on defendant's train from Coburg to Springfield, Oregon, and as the train approached the latter station, about 9 o'clock P. M., the signal whistle was given, the speed gradually slackened, and the train stopped about one hundred and twenty-five feet from the platform of the station ; that, the night being dark, the brakeman invited plaintiff to alight, whereupon she rose, and, with his knowledge, followed him to the front platform of the car while the train remained stationary, and, believing that the train had reached the station, plaintiff, with the brakeman's knowledge, commenced to descend the car steps, without being notified that the train had not reached the station or warned that it was dangerous to alight, and while so descending the steps the train was suddenly started with a jerk, causing plaintiff to fall beneath the car, which ran over her legs, crushing them, and necessitating their amputation.    The answer denies the charge of negligence, and alleges that plaintiff recklessly started out of the coach in which she was riding, to the front platform, and down the steps of the car, while the train was moving, and before it reached the station, and sustained the injury of which she complains in consequence of her own carelessness. The allegations of new matter in the answer having been denied in the reply, a trial was had, resulting in a judgment for plaintiff in the sum of $10,000, and defendant appeals.                                    AFFIRMED.

For appellant there was a brief over the names of *Fenton, Bronaugh & Muir*, and *E. R. Skipworth*, with an oral argument by *Mr. William D. Fenton*.

For respondent there was a brief over the names of *Thompson & Hardy*, and *H. D. Norton*, with an oral argument by *Messrs. H. W. Thompson* and *A. C. Woodcock*.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1.   At the trial, plaintiff having offered her testimony and rested, defendant's counsel moved the court for a judgment of nonsuit, on the ground that she had failed to show any negligence on defendant's part, but, the motion being overruled, an exception was saved.   The rule is well settled in this state that a motion for a judgment of nonsuit is in the nature of a demurrer to the evidence, in the disposal of which all the testimony produced by plaintiff is to be regarded as true, together with every intendment and reasonable inference which can arise thereon, and, when so considered, if a difference of opinion may exist as to the conclusions of fact deducible therefrom, the issue should be submitted to the jury for their determination ;   it being sufficient if the evidence offered tends to support the action, even though remotely :   *Tippin* v. *Ward*, 5 Or. 450 ;   *Herbert* v. *Dufur*, 23 Or. 462 (32 Pac. 302) ;   *Barr* v. *Rader*, 33 Or. 375 (54 Pac. 210).   The plaintiff testified, in her own behalf, that her age was twenty-one years, twenty of which had been spent in Springfield ;   and, speaking of the injury, she said that as the train approached her destination, at about 9 o'clock in the evening, the whistle was sounded, and the train stopped ;   whereupon the brakeman, coming into the car, of which she was the only occupant, said to her, "I will help you out with your things now ;"   that she rose from her seat, took a valise and a package in her right hand, and a package and a hat in her left hand, and followed the brakeman, who opened the door and held it back while she passed to the front platform ;   that the brakeman

crossed over the coupling to the baggage car, and while he was standing with his side towards her, and looking towards the engine, she asked him to take her valise, but, not receiving any reply to her request, she started down the steps, after the car had remained stationary about fifteen seconds, and, as she reached the third step, the train was suddenly started with a jerk, throwing her upon the rail, and the car passed over her legs, crushing them, and necessitating the amputation of the right about five inches above, and the left just below, the knee. Etta Smitson, plaintiff's sister, testified that she was at the station when the train arrived on the evening in question ; that the night was very dark, and the station lamp unlit ; that, standing in the door of the waiting room, she heard the signal whistle given, whereupon she went upon the depot platform towards the incoming train, which stopped about fifty feet from the station ; that the train, after remaining stationary about ten or fifteen seconds, was started up with a jerk, and came to the depot. Minnie McPherson corroborates the preceding witness, and says the engine stopped so that the cowcatcher was about fifteen feet from where she was standing on the depot platform with Etta Smitson, and that the train, having remained stationary about ten seconds, moved up to the depot. Henry Smitson, plaintiff's father, testified that the engine stopped about fifteen or twenty feet from where he was standing on the platform west of the depot, and that the train, after remaining stationary about twelve or fifteen seconds, was started up with a jerk. H. Carter, plaintiff's witness, testified that he was at Springfield when plaintiff was injured ; that the train came in that evening very slowly, and stopped about five seconds, when it pulled up quickly, the smoke coming in puffs from the engine.

The foregoing is the substance of the testimony pro-

duced by plaintiff relative to the cause of the injury, at the time the motion for a judgment of nonsuit was interposed, and such testimony having tended to prove the allegations of the complaint, does the evidence establish a cause of action sufficient to be submitted to the jury? In *Central Ry. Co.* v. *Van Horn*, 38 N. J. Law, 133, the declaration averred that a conductor in the night time, announced, in a car in which plaintiff was riding, the name of the station at which she intended to leave the train, which stopped before reaching it, and plaintiff, supposing that she had arrived at her destination, attempted to alight, when the train was suddenly put in motion, throwing her to the ground, in consequence of which she was injured, and it was held that the pleading was sufficient, Mr. Chief Justice BEASLEY saying: "The negligence here complained of was the giving of the false intelligence that the cars had arrived at the station, and by that means inducing plaintiff to go upon the car platform and endeavor to alight. The court would not be warranted in saying that it is not negligence to give notice of the approach to a station, and then to stop the train short of such station in the nighttime. Such a course would naturally tend to jeopard passengers; for it would induce them to believe that they had arrived at the station designated, and they would, in the ordinary course, go to the car platform. At night, this must be the inevitable result. It is said in the brief of the counsel of the defendant, that it was right to give the notice at a long distance from the depot, so that the passengers might prepare to leave the cars. This may do when the train is not to stop before it reaches the station. When a station is called the passengers have a right to infer that the first stop of the train will be at such station." To the same effect, see Hutchinson, Carr. § 615; *Memphis, etc. Ry. Co.* v *Stringfellow*, 44 Ark. 322 (51 Am. Rep.

598) ;   *Taber* v. *Delaware, etc. R. R. Co.* 71 N. Y. 489 ;   *Mc-Donald* v. *Illinois, etc. R. R. Co.* 88 Iowa, 345 (55 N. W. 102) ;   *Boss* v. *Providence, etc. Ry. Co.* 15 R. I. 149 (1 Atl. 9) ;   *McDonald* v. *Long Island Ry. Co.* 116 N. Y. 546 (15 Am. St. Rep. 437, 22 N. E. 1068) ;   *Columbus, etc. R. R. Co.* v. *Farrell,* 31 Ind. 408 ;   *McGee* v. *Missouri, etc. Ry. Co.* 92 Mo. 208 (1 Am. St. Rep. 208, 4 S. W. 739) ;   *Smith* v. *Georgia Pac. R. R. Co.* 88 Ala. 538 (16 Am. St. Rep. 63, 41 Am. & Eng. R. R. Cas. 143, 7 South. 119, 7 L. R. A. 323) ;   *Chicago, etc. R. R. Co.* v. *Arnol,* 144 Ill. 261 (33 N. E. 204, 19 L. R. A. 313) ;   *Devine* v. *Chicago, etc. R. R. Co.* 100 Iowa, 692 (69 N. W. 1042) ;   *Ward* v. *Chicago, etc. R. R. Co.* 165 Ill. 462 (46 N. E. 365) ;   *Lent* v. *New York, etc. R. R. Co.* 120 N. Y. 467 (24 N. E. 653).   A passenger having reached his destination is entitled to reasonable time and opportunity to leave the conveyance that has transported him, and if such vehicle is started suddenly while he is in the act of alighting, and he sustains injury thereby, the carrier is responsible for the negligence which produced the hurt : Hutchinson, Carr. § 612 ; 2 Wood, R. R. § 305 ; *Pennsylvania Ry. Co.* v. *Kilgore,* 32 Pa. St. 292 (72 Am. Dec. 787) ; *Chollette* v. *Omaha, etc. R. R. Co.* 26 Neb. 159 (41 N. W. 1106, 4 L. R. A. 135).

2.   Under these rules if the testimony produced by plaintiff was to be believed, the jury might have found that the train stopped before it reached the station ; that plaintiff was invited to leave the car, which was then stationary ; that she did not know that the train had not reached the depot platform ; and that while she was in the act of alighting the train was suddenly started, in consequence of which she was injured.   Whether fifteen seconds was a reasonable time in which to leave the car was a question for the jury, or, at least, her departure was not so unreasonably delayed that a court could say,

as a matter of law, that she was negligent in this respect, and hence no error was committed in refusing to grant the judgment of nonsuit.

3. When the cause was finally submitted, defendant's counsel renewed said motion, contending that the physical facts demonstrated by the nature of plaintiff's injury, the character of the train, the distance it is said to have moved after it is claimed to have been stopped, the destruction by plaintiff's counsel of a statement prepared by his client respecting the cause and manner of the injury, her admissions in relation thereto, and subsequent contradictory statements, the testimony of the witnesses who saw the train, and testified that it made no halt till it reached the station, showed beyond a reasonable doubt that the train did not stop as claimed; but, the motion being overruled, it is insisted that the court erred in this respect. There may be certain physical facts, the proof of the existence of which must necessarily overcome, as a matter of law, all testimony to the contrary. The present is not an age of miracles, and, if testimony be introduced at a trial which transcends the ordinary laws of the universe, the court, being obliged to take judicial notice of such laws, would probably be compelled to reject such testimony.* Assuming that such rule is applicable, we will examine the physical facts in evidence, to ascertain if they contradict the testimony produced by plaintiff respecting the manner of her injury, and show that the car had not stopped, but was in motion, when she attempted to leave it. The most cogent fact of this character is that the car wheels, in passing along

*NOTE.—The sections of Hill's Ann. Laws, here referred to, read as follows: Section 707. "There are certain facts of such general notoriety that they are assumed to be already known to the court."

Section 708. "The following facts are assumed to be thus known:— * * * 8. The laws of nature," etc.     REPORTER.

the track, ran over and crushed plaintiff's legs, while she was otherwise uninjured. This fact, however, does not conclusively show whether the car had been in constant motion, or was suddenly started with a jerk from a state of rest at the time the injury occurred: *Denver Tramway Co.* v. *Owens*, 20 Colo. 107 (36 Pac. 848.) The right leg having been crushed above, and the left below, the knee, shows that plaintiff was lying obliquely across the track at the instant the car passed over her limbs. The evidence shows that she attempted to alight from the left side of the car, and as her hands were occupied with her valise and parcels, so that she could secure no support from the railing, her face must have been turned towards the direction in which she was going, and, her limbs having been crushed in the manner indicated, her body must have been completely turned, so that her face was towards the car at the time she was injured. If the train was in motion when plaintiff descended the steps, her body would necessarily have attained the same momentum which the car possessed, and the inertia would not be so great as if the car were suddenly started from a state of rest. The accelerated motion thus occasioned by the sudden starting would be communicated to plaintiff's feet by reason of her position on the step, and the greatest inertia would result to her head and body, causing them to strike the corner of the car in such a manner as to turn her face towards the track, in the condition in which she was found, from which it might be reasonably inferred that the physical fact corroborated plaintiff's testimony.

Another physical fact which it is urged contradicts plaintiff's testimony, that a stop was made just before the station was reached, is the character of the train then being operated. This train, so the evidence shows, consisted of a locomotive and its tender, a baggage car

partly occupied for the transportation of mail, and a passenger coach, in which plaintiff rode. It is undoubtedly true that the length and weight of the train are factors which necessarily conduce to steadiness of motion, and it is equally true that a heavy train cannot be started from a position of rest with the same celerity as that attained by an engine propelling a lighter train. The train being light, its motion would probably be variable, in which case plaintiff would be more apt to be conscious of its motion than if it were heavier. So, too, the sudden start of the train in question would tend to produce the effect claimed by plaintiff. The jury might, therefore, reasonably infer, from a consideration of the physical fact of the size and weight of the train, that it corroborated the testimony produced by plaintiff respecting the stop claimed to have been made before the station was reached.

The last physical fact which it is claimed contradicts such testimony is the distance it is said the train passed over after the alleged halt before it finally stopped. The testimony produced by defendant shows that a stake was set indicating the point on the track where the injury occurred, which is one hundred and thirty and one-half feet west of the depot platform, and that the brakeman, having seen plaintiff fall, signaled the engineer, who stopped the train so that the front end of the passenger coach was about ten feet from the west end of said platform; thus showing that the train passed over one hundred and twenty feet of the track after the injury occurred, before it was stopped. No expert testimony was introduced showing what time was required to stop a train of the character in question, and moving with a velocity of about four miles per hour, as claimed by defendant's witnesses, and hence it is impossible to say that this fact is a factor in the case. The train being light, and moving

with the speed claimed, its momentum could not have been very great, and that it could have been easily stopped must be conceded. The fireman testified that he saw the signal, and informed the engineer, who stopped the train ; but whether the signal was seen when first given does not appear, and, in the absence of such evidence, we think it cannot be said that the physical fact of the distance passed over by the train after the accident contradicts plaintiff's testimony that the train was stopped and again started. All of defendant's employees who saw the train as it approached the station, or were engaged in operating the train, say that it made no stop until after the injury occurred. Their testimony in this respect was corroborated by that of V. H. Read, a railway postal clerk, who was occupied in the performance of his duties in the baggage car, and W. F. Hunnicutt, a mail messenger at Springfield, who observed the approaching train. Evidence was introduced tending to show that plaintiff, at the time she was injured, said, in response to the inquiry as to how it occurred, '' I thought the train had stopped.'' Evidence was also introduced tending to show that plaintiff and her witnesses had made contradictory statements respecting the stopping of the train before it reached the station, and as to one of them testimony was offered tending to impugn his veracity. Plaintiff's counsel admitted, at the trial, that he purposely destroyed a written statement made by his client soon after the injury, giving her version of the occurrence. The testimony of the fireman on the engine tended to show that before the injury occurred the steam was shut off, and that the train was "drifting in ;'' that thereafter he thought the air was slightly applied before a switch was passed ; and that, if a miscalculation were made when shutting off steam as to the momentum required to propel the train to the station, the train was generally allowed to stop. A. R. Brabham,

a witness called by defendant, says that the train was running very slow over the switch, and thereafter seemed to be running faster at the point where the injury occurred. G. W. Brabham, appearing as a witness for defendant, testified that he was not in a position where he could see the train all the time, so as to be able to observe whether it stopped before reaching the station, but he says he saw a lantern carried by a person on the train moving up and down. The evidence shows that such a motion is a signal to the engineer to go ahead.

The substance of the testimony produced by the defendant has been stated somewhat in detail, not for the purpose of commenting upon its weight or the credibility of the persons who gave it,—for that is not within the purview of our authority, under the practice prevailing in this state,—but to show that the jury from this testimony might reasonably have inferred that, after the steam was shut off and the train was "drifting in" to the station, the speed was checked by the air being slightly applied before passing the switch ; that the train came to a halt, as was likely to occur when a miscalculation was made in shutting off the steam ; that the brakeman, after opening the car door for plaintiff to pass out, having discovered that the train had not quite reached the proper place for passengers to alight, gave the "up and down" signal with his lantern, whereupon the train was suddenly started, causing the injury complained of, thereby showing that such testimony corroborated that given by plaintiff's witnesses.

At the trial plaintiff's counsel admitted that he destroyed a written statement respecting the manner in which his client was hurt, made by her at a time when it was supposed by her friends that she would die from the effects of the injury. The statute declares that the willful suppression of evidence creates a disputable pre-

sumption that such evidence, if produced, would be adverse to the party suppressing it :   Hill's Ann. Laws, § 776, subd. 5.   Such statement, however, was inadmissible in evidence, except to contradict plaintiff's testimony, which could have been accomplished by proving its contents, but, as no effort was made to do so, the jury might well infer that the statement could not have been very important, even for that purpose.   The witness Minnie McPherson signed a written statement, prepared by defendant's agents, which contradicts the testimony given by her on the trial.   She testified, however, that the persons preparing such statement did not write it as she suggested.   G. W. Brabham, defendant's witness, signed a similar statement, prepared by the same persons, and he also says that the statement was not written as he directed.   The physical facts are not such, in our judgment, as to take the case from the jury, who were the judges of the weight and credibility of the testimony, including the contradictory statement, and no error was committed in ultimately overruling the motion for a judgment of nonsuit.

4.   The court, over defendant's objection and exception, permitted the following question to be propounded to the plaintiff :   " Where did you suppose the train was when you got up to leave your seat in the car?" to which she replied :   " I supposed the train was at the Springfield depot; the brakeman inviting me out made me think I was getting off at the proper place."   It is argued that negligence should not be imputed to defendant, or its liability made to depend, upon plaintiff's belief. Plaintiff having lived in Springfield, a small country town, the greater part of her life, the jury might have reasonably inferred that she was acquainted with the depot and its immediate surroundings, in which case a greater degree of care was necessary on her part than if

she had been a stranger in the place.    To rebut such inference, the question and answer were proper, especially so when it is considered that the night was quite dark, and that plaintiff's witnesses had testified that the station lamp was not lit.

5.    Ed Mills, the brakeman on the train at the time plaintiff was injured, appearing as defendant's witness, testified in chief that he was standing on the platform of the car, and saw her fall; whereupon the following questions were asked and answers given, over defendant's objection and exception : "Were you present at Coburg the next morning, when the train made the stop at the station on the trip north, and at that time and place did you not have a conversation with Wilber Vaughn and Arthur Holland, in which you told them that Jennie Smitson walked out on the platform, and down the steps, and stepped off the lower step, and fell, and rolled under the wheels of the car, or words to that effect?    A. I don't remember having a conversation with them at all.    Vaughn asked me how it happened, and I told him I didn't know how it happened.    There were several asked me how it happened, and I told them I didn't know.    Q. You mean to be understood as swearing that you did not, in the presence of those parties, make the statement that I have related, or any of those words, or words to that effect?    A. No, sir.    Q. Did you not in the evening of that day have a conversation with the same parties, Wilber Vaughn and Arthur Holland, at the station when the train stopped on the trip south, in which you told them that Jennie Smitson fell from the platform, or one of the top upper steps, and that you tried to catch her, but just missed her cape, and that she fell lengthwise of the train, and in attempting to get up threw her legs across the track, and got them run over, and that you saw the whole thing, or words to

that effect, and in the presence of other persons unknown at Coburg?    A. Well, I believe there was said a few words.    I did talk a little.    There was nothing said about my seeing it all, or catching her,—nothing of that kind at all.    There was quite a little work to do while we were at Coburg.    There was a large crowd around there that evening.    I said nothing about catching or seeing her.''

It is insisted that Mills had given no testimony inconsistent with the alleged narration of the manner of the injury, that the statements imputed to him were not relevant to the issue, and that the court erred in permitting a foundation to be laid to impeach an important witness in an immaterial matter.    The credit of a witness may be impeached by proof that he has made statements out of court, concerning matters relevant to the issue, inconsistent with his testimony given at the trial; but, before this can be done, it is necessary, in cases of verbal statements, first to call his attention to the time, place and persons present, so as to give him an opportunity to refresh his memory, and when this has been done he may be asked if he made the statement imputed to him :    Hill's Ann. Laws, § 841 ;    *State* v. *McDonald*, 8 Or. 113 ;    *Sheppard* v. *Yocum*, 10 Or. 402 ;    *State* v. *Hunsaker*, 16 Or. 497 (19 Pac. 605) ;    *State* v. *Ellsworth*, 30 Or. 145 (47 Pac. 199);    *State* v. *Welch*, 33 Or. 33 (54 Pac. 213);    *State* v. *Bartmess*, 33 Or. 110 (54 Pac. 167).    Mills said in his cross-examination that when standing on the car platform he felt something touch his arm, and, turning, he caught a glimpse of plaintiff's dress, and saw her light on her head and shoulders, her feet being up.    Upon further cross-examination, he said he did not see her feet or know where they were.    The witness having made contradictory statements respecting the position of plaintiff's feet when she fell, the limit of

his cross-examination, as to her situation on the ground, was within the discretion of the trial court, for the purpose of testing his veracity and the accuracy of his memory (*Neal* v. *Neal*, 58 Cal. 287); and as the narrative of the injury, so imputed to him, related to the manner in which the accident occurred, his testimony in relation thereto was material, and no error was committed in permitting a foundation to be laid for impeaching testimony.

6. It is maintained, however, that such statement out of court was a narrative of a past occurrence, and, not being a part of the *res gestæ*, it was the duty of the court to instruct the jury that Mills' alleged declarations were not admissible, except for the purpose of contradicting him. The rule is well settled that alleged declarations of a witness made out of court, which are inconsistent with the testimony given by him at the trial, are inadmissible as substantive evidence : *State* v. *Fitzhugh*, 2 Or. 227 ; *Langford* v. *Jones*, 18 Or. 307 (22 Pac. 1064); *State* v. *Jarvis*, 18 Or. 360 (23 Pac. 251); *State* v. *Steeves*, 29 Or. 85 (43 Pac. 947). In *Josephi* v. *Furnish*, 27 Or. 260 (41 Pac. 424), it was held that the jury should have been instructed that evidence of contradictory statements should only be considered for the purpose of impeaching the credibility of the witness to whom such statements were imputed. It does not appear that any request was made in that case to instruct the jury as indicated, and, while it is true that a trial court should state to the jury the law applicable to the facts involved, no error can well be predicated upon the court's failure in that respect, in the absence of a request for such instruction : *Page* v. *Finley*, 8 Or. 45 ; *Kearney* v. *Snodgrass*, 12 Or. 311 (7 Pac. 309); *State* v. *Foot You*, 24 Or. 61 (32 Pac. 1031, 33 Pac. 537). No request was made therefor in this case, notwithstanding which the court told the jury that testimony had been admitted tending to show that some of the witnesses had

made statements out of court which it was claimed contradicted their testimony given at the trial, and that it was their duty to take into consideration such contradictory statements in determining the value and weight of the testimony of such witnesses.

7.   The court charged the jury, in effect, that, when a passenger on a railway train arrived at his known destination, the law required the carrier to halt at the usual stopping place for a sufficient length of time to enable him safely to alight. An exception to this portion of the charge having been taken, it is insisted that the court erred in not limiting such time. A passenger, having arrived at his destination, is entitled to a reasonable time in which to alight, and such time is to be measured by the number of passengers who are obliged to leave at that point, their age, sex and physical condition, the nature of the landing place, and the quantity of light shed thereon : *Keller* v. *Sioux City, etc. R. R. Co.* 27 Minn. 178 (6 N. W. 486). The defendant's theory is that the train had not come to a halt when the injury occurred, and, as far as defendant is concerned, the time allowed for alighting prior to reaching the station was immaterial. The greatest estimate of the length of the stop made by the train before reaching the station, as testified to by plaintiff's witnesses, is fifteen seconds, and, the time being so short, we cannot think the defendant was prejudiced by the omission of the word "reasonable" as qualifying the word "sufficient" used in the instruction.

The court instructed the jury to the effect that if they found that the train stopped before reaching the station, and that plaintiff was led to believe from the words or acts of defendant's employee that it was the proper time for her to alight, and that relying thereon she went upon the platform and down the steps while the car was stationary, and was thrown to the ground by the sudden

start or jerk of the car, or in any other manner, and injured, the defendant was guilty of negligence. An exception having been reserved to this portion of the charge, it is insisted that plaintiff was permitted to recover upon proof of defendant's failure to warn her that the train was moving, and that it was dangerous for her to alight; that this instruction places plaintiff's reliance upon the fact that the train had reached the depot, and not upon her belief that the car had stopped. The court told the jury that, if plaintiff was thrown to the ground "in any other manner," the defendant was liable. This phrase was undoubtedly used as a synonym for a sudden start or jerk of the car, and, while superfluous, we do not think it was prejudicial.

8. It is maintained that no testimony was introduced that justifies an instruction respecting any reliance upon the acts or words of the brakeman which would induce plaintiff's belief that the train had reached the station. The brakeman testified that, as the train approached the depot, the signal whistle was sounded, and he went into the car in which plaintiff was riding, and said, "the next station is Springfield." If, after such announcement the car was stopped before reaching the station, and plaintiff, by reason of the darkness, was unable to perceive that the train had not arrived at the point where she was to depart, it was for the jury to say whether the announcement and stop were sufficient to raise a belief in her mind as to the existence of such fact: *Central R. R. Co.* v. *Van Horn*, 38 N. J. Law, 133; *Brooks* v. *Boston & Maine R. R. Co.* 135 Mass. 21; *Merritt* v. *New York, etc. R. R. Co.* 162 Mass. 326 (38 N. E. 447).

9. The court instructed the jury to the effect that if they found the train had stopped before reaching the station, or was moving so slowly as to lead plaintiff, as a prudent person, to believe that it had reached the depot

and was stationary, and that, acting upon such belief, she left the car, and descended the steps, and the brakeman saw her do so without informing her that the train had not reached the station, or that it was dangerous for her to alight, the defendant was guilty of negligence. An exception having been taken to this portion of the charge, it is contended that plaintiff was thereby erroneously permitted to recover upon an alleged ground of negligence not stated in the complaint. The complaint avers that the train stopped before reaching the station, and was negligently started with a jerk, without allowing plaintiff a reasonable time to alight; and this presents the question whether, under such an allegation, plaintiff can recover, if the train was slowly moving at the time she descended the car steps, though she believed the train was stationary: In *Bartholomew* v. *New York, etc. R. R. Co.* 102 N. Y. 716 (7 N. E. 623), the plaintiff, a passenger on defendant's train as it approached a station in the night time, was informed by the conductor that she must change cars at the first place at which the train would stop; that "Rochester" would be called, and she must take the second right-hand train. Thereafter the brakeman announced, "Rochester; change cars;" and, the train having either stopped or slowed down so that to plaintiff, in the car, it appeared to have stopped, she went upon the platform, and by a sudden jerk of the train was injured, and, having secured a judgment for the damage sustained, the defendant appealed, assigning as error the following sentence in the judge's charge: "If the train appeared to have stopped, then, for all practical purposes and for the consideration of this case, it had stopped." This language was explained by the following: "If from the evidence you shall say that, when this woman stepped out upon the platform, the train had stopped, or appeared to persons of ordinary intelligence and observation to have

stopped, following, as it did, the conceded announcement, the fact that an announcement had been made that the station had been approached, and by a sudden jerk, of which she had no warning, she was precipitated and received this injury, she has a right of action.'' Mr. Justice EARLE, speaking of the plaintiff, in deciding the case, says: ''She was bound to act upon appearances, and, after making the announcement, if the train was run so slow as to appear to a person of ordinary intelligence and observation to have stopped, ordinary care for the safety of the passengers required the train to be so run and managed as not to endanger their lives, and a sudden jerk or start, without any warning, when the passengers were upon their feet, moving towards the platform of the cars, was sufficient evidence of carelessness to impose liability upon the defendant. As to any one in the cars when the train appeared to have stopped, it was the same as if it had stopped, and the same duty rested upon the defendant to care for the safety of the passengers.''

In *Mearns* v. *Central, etc. R. R. Co.* 48 N. Y. Supp. 366, a conductor on defendant's train having announced, in the nighttime, ''All out; Jersey City; last stop,''—plaintiff, a passenger in one of its cars, rose, walked to the platform, and, the vestibule door being opened, he, supposing the train to be stationary, attempted to alight in the conductor's presence, and was thrown down and run over, and, having brought an action for the injury sustained, a judgment of nonsuit was given, in reversing which Mr. Justice BARRETT says: ''The conductor knew, or should have known, that the car was in motion at the time he invited plaintiff to alight. There was evidence that the conductor was facing the plaintiff, and saw that the latter was acting upon his invitation. If it was dangerous for the plaintiff to do what he was thus invited to do, it was the conductor's clear duty to check him, or,

at least, inform him of the danger. The jury might well have found upon the evidence that the conductor neglected his duty. At all events, the question was for them." As to injuries received by passengers in consequence of acting upon announcements made or in obeying instructions or commands given by railway employees, see *Mensing* v. *Michigan Cent. R. R. Co.* 117 Mich. 606 (76 N. W. 98) ; *Lent* v. *New York Cent. R. R. Co.* 120 N. Y. 467 (24 N. E. 653) ; *Lewis* v. *President of Del. Canal Co.* 145 N. Y. 508 (40 N. E. 248) ; *Kentucky & Ind. Bridge Co.* v. *Quinkert,* 2 Ind. App. 244 (28 N. E. 338).

Plaintiff testified, in effect, that the brakeman held the door back with his hand while she passed out of the car to the platform, and, if the jury believed her, they might reasonably have found that the brakeman knew she accepted his invitation, and intended to alight at that time, and, the night being dark, it was for the jury to say whether plaintiff could have discovered that the train was moving. It was the duty of the brakeman to know whether the car was stationary, and, knowing that plaintiff intended to alight, it was his duty to warn her of the danger to be apprehended. The negligence charged consisted not only in starting a stopped train with a jerk before she was allowed a reasonable time to leave the car, but in the brakeman's permitting her, in pursuance of his invitation and with his knowledge that she intended to alight at that time, to follow him to a place which he knew or ought to have known was dangerous, and permitting her to attempt to leave the train without warning her of the danger. The complaint having stated that plaintiff left the car and descended the steps with the knowledge of the brakeman, who failed to warn her of the danger, and testimony having been introduced from which the jury might have found such fact, and that the

plaintiff believed the car was stationary, it was, as to her, stationary, and no error was committed in giving the instruction complained of.

10. The court instructed the jury to the effect that, if they found plaintiff was injured in consequence of defendant's negligence, they might consider as an element of damages the bodily pain and suffering which she had endured, or might thereafter suffer, and the bodily and mental suffering to which she will be subjected, on account of the deformity occasioned by the loss of her limbs, and, having considered those and other elements of damage, it was the duty of the jury to determine such sum as in their judgment would compensate plaintiff for the injury received, not exceeding the amount demanded. An exception having been taken to this portion of the charge, it is contended that the plaintiff's mental suffering occasioned by the loss of her limbs is not an element of damage; that the instruction did not limit her future bodily suffering to such as the evidence reasonably showed she would be compelled necessarily and inevitably to endure; and that the jury were erroneously told that it was their duty absolutely to compensate plaintiff for her injury. In *Kendall* v. *City of Albia*, 73 Iowa, 241 (34 N. W 833), it was held that an instruction authorizing the jury to award damages for future mental suffering was not erroneous. In *Heddles* v. *Chicago, etc. Ry. Co.* 77 Wis. 228 (20 Am. St. Rep. 106, 46 N. W. 115), plaintiff, having had his legs crushed, necessitating amputation, by being run over by defendant's cars, brought an action for the injury, and at the trial the court instructed the jury that they might consider, as an element of damage, the mortification and anguish of mind which plaintiff would suffer in the future by reason of the mutilation of his body, and it was held, in affirming the judgment, that no error was committed in giving the instruction. The

weight of judicial authority supports the rule that, where a person has sustained a bodily injury in consequence of the negligence of a party, the future mental suffering necessarily to be endured constitutes an element of damages: 8 Am. & Eng. Enc. Law (2 ed.), 660 and notes; Hutchinson, Carr. (2 ed.) § 806; *Sherwood* v. *Chicago, etc. Ry. Co.* 82 Mich. 374 (46 N. W. 773); *Miller* v. *Boone County*, 95 Iowa, 5 (63 N. W. 352).

11.   The instruction complained of does not limit the jury in express terms to a consideration of plaintiff's future bodily suffering which the evidence shows it is reasonably certain she will be compelled to endure as a result of the injury, but, by a consideration of the other portions of the charge, such limitation is fairly inferable therefrom.

12.   It has been said that scarcely any sum would compensate a laboring man for the loss of his limb, and that, where such loss is occasioned by the negligence of a party, relative compensation only can be awarded: *Ashworth* v. *Southeastern Ry. Co.* L. R. 18 Q. B. 104; *Western, etc. R. R. Co.* v. *Young*, 83 Ga. 512 (42 Am. & Eng. Ry. Cas. 135, 10 S. E. 197). In actions for an injury not willfully inflicted, compensation is the fundamental principle of the law of damages (8 Am. & Eng. Enc. Law [2 ed.], 544, 546); and, while absolute compensation for injury resulting from the loss of a limb is not attainable, we do not think the instruction complained of was prejudicial: *Illinois Cent. Ry. Co.* v. *Cole*, 165 Ill. 334 (46 N. E. 275); *Atherton* v. *Village of Bancroft*, 114 Mich. 241 (72 N. W. 208); *Louisville, etc. Ry. Co.* v. *Falvey*, 104 Ind. 409 (3 N. E. 389); *Cleveland, etc. Ry. Co.* v. *Newell*, 104 Ind. 264 (3 N. E. 836, 54 Am. Rep. 312.)

13.   The court, having instructed the jury that the burden of proof was upon the plaintiff, said to them: "By the burden of proof is meant that she must make

out the better case." An exception having been taken
to this portion of the charge, it is contended that plain-
tiff's right of recovery did not depend upon her making
out the "better case," but upon proof of defendant's
negligence in some of the particulars specified in ·the
complaint. The charge of the court, when construed in
its entirety, as it should be, we do not think objection-
able as claimed : *State* v. *Anderson*, 10 Or. 448 ; *Well-
man* v. *Oregon Short Line Ry. Co*. 21 Or. 530 (28 Pac. 625);
*State* v. *Tarter*, 26 Or. 38 (37 Pac. 53); *Matlock* v. *Wheeler*,
29 Or. 64 (40 Pac. 5, and 43 Pac. 867); *State* v. *Bartmess*,
33 Or. 110 (54 Pac. 167).

It is contended that instructions numbered 10, 11 and
13, given by the court, are directly in conflict with in-
structions numbered 17, 18 and 22, given at defendant's
request. These instructions are as follows :

"(10) When a person purchases a ticket of a railroad
company, and enters its cars for the purpose of being
conveyed from one point to another, the law raises an
obligation on the part of the railroad company to carry
the passenger safely to the point to which the ticket
was purchased, and to stop its train at the point to which
the ticket was purchased, at the station of the company
or usual place of stoppage, for a sufficient length of time
to enable the passenger to safely alight from the train.

"(11) If, after a careful examination of all the evi-
dence in this case, you are satisfied, by a preponderance
thereof, that at the time the plaintiff was injured she
was led to believe, by the words and acts of the defend-
ant's employee, and had reasonable grounds to believe,
that the train had arrived at the station at which she
wished to alight, and you find that the train had stopped
and was standing at the time she passed from the plat-
form of the car to the steps of the car, and after she had

37 OR.—7.

reached the steps of the car, and while there, she was thrown to the ground by the sudden start or jerk of the car, or in any other manner, and injured in the manner detailed to you by the witnesses, then you will be justified in finding that the injury occurred through the neglect or want of care of the defendant company, and the plaintiff is entitled to a verdict at your hands.''

''(13) Or, if you should find from the evidence introduced in this case that the plaintiff left the car in which she was riding under the belief that the train had stopped, and went upon the platform of the car with her hand baggage, and attempted to alight, under the belief that she had reached the station, and at that time the train had stopped, or was moving so slowly as to lead the plaintiff, as a reasonably prudent person, to believe it was stationary, and was at the station of the defendant at Springfield, and you also find that the brakeman, the employee of the defendant, saw the plaintiff leave the car, and descend the steps to the platform, and he did not warn or inform her that the train had not yet reached the station, or that it was dangerous to alight at the point at which she was attempting to alight, then the defendant was guilty of negligence, and the plaintiff is entitled to a verdict at your hands.''

''(17) If you find from the evidence that shortly before the accident, and as defendant's train in question was approaching the station at Springfield, the servants or servant of defendant announced the station of plaintiff in the car, and the whistle was at or about that time, or shortly before, blown for this station, and if you also find that as the train was approaching the station, and within a short distance therefrom, the defendant, by its brakeman, after having announced the station, opened the front door of the coach in which plaintiff was riding, fastened the door back, and himself went onto the front platform

of said coach while the train was yet in motion, such acts of the defendant, under such circumstances, would not be an invitation to the plaintiff to alight from said train at said time or place, or at any time or place, until the car in which she was riding had come to a full stop. Plaintiff, under such circumstances, would have no right to attempt to alight from said car until the same had come to a full stop.

"(18) If you find and are satisfied, from the preponderance of the evidence, that at the time and place, and when and where, the plaintiff attempted to alight from the car in which she was riding, the same was in motion, and that the said car had not come to a full stop, and notwithstanding plaintiff may have believed and thought at the time that she had arrived at her station, and that the train was about to or had already stopped, yet if, under such circumstances, she attempted to voluntarily alight from the train without the direction, invitation, or command of the defendant at the time, and if such act upon her part caused or contributed to the injuries which she received, she must be held to have assumed the risk of the injuries which she did receive, and she would not be entitled to recover. Under such circumstances, the defendant would not be liable, and your verdict must be for the defendant."

"(22) I instruct you that the defendant was not an insurer of the safety of the plaintiff, or that she would travel upon its train and be delivered at its station at Springfield without injury or accident, but the defendant was bound to exercise that degree of care reasonably consistent with its business of a common carrier, and being the highest degree of practical care, diligence, and skill consistent with the mode of transportation. The defendant was not an insurer against accident, but was bound to a very high degree of care, and, while this is so, the plaintiff was also

bound to exercise that degree of care for her own safety and protection which a reasonably prudent person, riding upon a car transported by steam, would suggest and require. She was bound to exercise her sense of sight, hearing, and circumspection, and was under the necessity of taking no risks which a prudent person, under like circumstances, would not assume or take. It was her duty to remain in the car seat until the station was announced and the train had come to a stop, and she could not, without assuming the risk of injury or accident, leave the car, and go out upon the platform, and attempt to alight therefrom, while yet the train was in motion ; and if she should do so before the train had stopped, and should, as the train was almost stopped, and, as she may have mistakenly supposed, actually stopped, undertake to alight from the train, although the train had not in fact stopped, and she was thereby injured either by falling from the car or being jerked therefrom by the jerk or movement of the car ordinarily incident thereto, and before the train had come to a full stop at the station, then she must be held to have assumed the risk of any injury which she may have received, and cannot recover.''

A carrier of passengers is not an insurer of their safety, and the twenty-second instruction simply amplified the tenth, in relation to the reciprocal duties of the respective parties. The announcement of the station, or the brakeman's offer to assist plaintiff to alight, as stated in the seventeenth instruction, did not authorize her to leave the train until it came to a full stop. So, too, if plaintiff, while the train was in motion, voluntarily attempted to alight without the invitation, direction or command of the defendant, as stated in the eighteenth instruction, and was injured, her negligence would preclude a recovery. But if the signal whistle was given, the station announced in the car in which she was rid-

ing, and the train stopped before reaching the depot, or was moving so slowly that it appeared in the car, to plaintiff as a reasonably prudent person, to be stationary, and if the brakeman then offered to assist her to alight, in pursuance of which she rose and followed him, and he opened and held the car door back while she passed to the platform, and if he stood thereon with his side towards her while she descended the car steps, after receiving no response to her request to take her valise, and, the night being dark, if the station lamp was unlit, so that plaintiff could not observe that the train was moving, and if the brakeman did not warn her of the danger, she was warranted in believing that the train had stopped: *Bartholomew* v. *New York, etc. R. R. Co.* 102 N. Y. 716 (7 N. E. 623).

In *Southern Kan. Ry. Co.* v. *Pavey,* 48 Kan. 452 (29 Pac. 593), a passenger having been informed by the conductor that she must change cars at Ottawa, her pass, given in exchange for a ticket, was taken up as the train approached said city; and, thereafter, the brakeman having announced "Ottawa," the train was soon stopped at a railway crossing before reaching the depot; and the night being dark, and the defendant in error, a stranger in Ottawa, supposing it was the proper time to alight, rose, and with her husband and child, started towards the rear door of the car to get off, passing the conductor, who occupied a seat back of them, and meeting the brakeman at the car door as they were going out, neither of whom said anything to them. As the defendant in error was descending the car steps, her husband, with the baby, having alighted, the train was suddenly started with a jerk, and she fell and was injured. At the trial of the action brought by her for the injury, an exception was taken to the following instruction: "If the brakeman upon the platform saw her descend the steps as if

to get off the train, and failed to warn her of the danger, these are matters from which the jury are authorized to find negligence on the part of the company, and sufficient to authorize a recovery, unless, as before stated, she herself was guilty of negligence contributing to the injury.'' A judgment having been rendered for the passenger, the company sued out a writ of error, and Mr. Justice VALENTINE, referring to the instruction, in affirming the judgment, says: ''There was no evidence introduced to show that the brakeman was upon the platform while the plaintiff was descending the steps as if to get off the train, or that he saw her descending the steps, unless by very remote inference. He did, however, under the plaintiff's evidence, see the plaintiff and her husband, with their wraps, their basket and their baby, go out of the car as if to get off the train, which is substantially the same thing as is mentioned in the instruction of the court; and yet, notwithstanding the fact that he saw all these things, he still failed to warn her or her husband of any danger, or to give them any information. It is possible that he saw her descending the steps, but the evidence does not show it, unless by possible inference. From what he did see, however, we think it was just as much his duty to have warned the plaintiff of the danger as it would have been if he had seen her descending the steps.''

If the jury believed plaintiff's testimony, they might reasonably have found therefrom that the brakeman knew that she followed him to the car platform to alight, and that, having failed to warn her of the danger which he was presumed to know, and which by reason of the darkness she could not perceive, the defendant was negligent in this respect. Construing the thirteenth instruction with the twelfth, of which it is the logical sequent, the eleventh and thirteenth instructions, when read in

connection with the seventeenth and eighteenth, fairly illustrate the law applicable to the case in the particulars to which attention has been called in construing them.

14. In other respects, it will be observed that these instructions are somewhat conflicting, and this presents the question whether the judgment should be reversed for that reason. In *Morrison* v. *McAtee*, 23 Or. 530 (32 Pac. 400), Mr. Justice BEAN, speaking of such instructions, says: "The giving of inconsistent and contradictory instructions is error, because the jury will be as likely to follow the one as the other, and the fact that the law may be accurately stated on one side will not obviate error, if thus given for the other party." In that case it was alleged that a contract was entered into whereby the defendant's testator agreed to support plaintiff during his life, in consideration of such service as the latter might be able to render. The testator having died, plaintiff's claim against his estate for an allowance on account of such support was rejected by the executor, but the county court allowed the claimant the sum of $1,125. An appeal therefrom having been taken, at the trial thereof the circuit court, at the executor's request, instructed the jury that, "if you should find for the plaintiff, then you should deduct from the amount otherwise necessary to support the claimant any amount which he could reasonably earn during the same time for himself." In another instruction the court, at the claimant's request, told the jury that, if they should find in favor of the plaintiff, they should "assess his damages at such sum as will give him a reasonable and comfortable support during the probable length of Morrison's life, commencing from the twelfth day of November, 1890, the date of McAtee's death." A verdict for about $1,400 having been returned, judgment was given thereon, and the executor appealed, and, having excepted to the latter in-

strction, the judgment was reversed, because said instructions were inharmonious, conflicting and misleading, and it was impossible to tell which rule the jury adopted in arriving at their verdict. In the case at bar, however, no difficulty is encountered in determining which instructions were adopted by the jury in reaching their conclusions.

The instructions given by the court of its own motion were correct expositions of the law. Those given at defendant's request restricted the former in some particulars ; but, as the jury found for the plaintiff under the instructions given upon the court's motion, it is evident they were not misled by the latter instructions, and, unless they have been so misled, inconsistent instructions are not grounds for reversal of a judgment : 2 Thompson, Trials, § 2401 ; *Kelly* v. *Cable Co.* 7 Mont. 70 (14 Pac. 633); *People* v. *Velarde*, 59 Cal. 457 ; *People* v. *Smith*, 59 Cal. 601 ; *People* v. *Ah Luck*, 62 Cal. 503 ; *People* v. *Turcott*, 65 Cal. 126 (3 Pac. 461) ; *Dennison* v. *Chapman*, 105 Cal. 447 (39 Pac. 61).

15. The court said to the jury : " There is evidence on behalf of the plaintiff to the effect that the train did come to a standstill," etc., and "there is evidence before you tending to show that the accident occurred at about 9 o'clock," etc. An exception having been taken to this portion of the charge, it is maintained that the court thereby presented to the jury the facts of the case in violation of the statute prohibiting it : Hill's Ann. Laws, § 200. In *State* v. *Brown*, 28 Or. 147 (41 Pac. 1042) it was held that an instruction stating that there is evidence "to the effect" or "tending to show" a certain fact in issue, but leaving to the jury the finding of such fact, did not contravene the provisions of the statute. See, also, *Coos Bay R. R. Co.* v. *Siglin*, 34 Or. 80 (53 Pac. 50, 11 Am. & Eng. R. R. Cas. 715). We do not think the court at-

tempted to state the facts to the jury, but to call attention to the theories of the respective parties ; for it said in another instruction : " There is evidence on the part of the defendant to the effect that the train did not stop."

Exceptions were taken to the court's refusal to give certain instructions requested by the defendant, but such instructions were, in our judgment, properly refused. A careful examination of the record leads us to believe that none of the errors assigned were prejudicial to the defendant, and hence it follows that the judgment is affirmed.                                   AFFIRMED.

Decided 10 January, 1898.*