Argued October 8, decided October 20. 1908 ; rehearing denied January 12, 1909.

## ARMSTRONG *v.* PORTLAND RY. CO.

[97 Pac. 715.]

DISCOVERY—EXAMINATION BEFORE TRIAL—"PARTY."

1. Section 826, B. & C. Comp., authorizing the taking of the deposition of a "party" to an action before trial, does not authorize the taking of the deposition of the secretary of the defendant corporation, where such secretary was not individually a party.

SAME—SUBJECTS OF EXAMINATION.

2. Section 826, subd. 1, B. & C. Comp., authorizing the taking of a deposition of a party before trial, only authorizes his examination with reference to matters pertinent to the issue, and does not contemplate compelling the party to disclose the names of his witnesses, the manner in which he expects to establish his case, or confidential reports or communication of his agent in relation to the controversy.

CARRIERS—INJURIES TO PASSENGERS—STREET RAILROADS—PREMATURE START.

3. In an action for injury to a street car passenger while alighting from a moving car, evidence *held* insufficient to sustain a verdict, either on the theory of defendant's negligence in suddenly starting the car while plaintiff was alighting, or in failing to warn her that the car had not stopped.

SAME—CONTRIBUTORY NEGLIGENCE.

4. Where plaintiff attempted to alight from a moving street car, without any necessity or invitation, and was injured, she was negligent as a matter of law.

SAME—FAILURE TO WARN.

5. The conductor of a street car was not negligent in failing to warn plaintiff against attempting to alight before the car stopped, where the conductor did not know and had no reason to believe that she intended to do so.

SAME—RES IPSA LOQUITUR.

6. That a passenger on a street car was injured by alighting before the car stopped, did not of itself constitute a *prima facie* case of the carrier's negligence.

From Multnomah: JOHN B. CLELAND, Judge.

This is an action by Nora Armstrong against the Portland Railway Co. to recover damages for an injury sustained by the plaintiff while attempting to alight from one of defendant's cars.

Trial was had before a jury, and at the conclusion of which the court directed the jury to return a verdict in favor of the defendant, and plaintiff appeals.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action to recover damages for an injury received by plaintiff while attempting to alight from one of defendant's cars.

It is alleged in the complaint, in substance, that on the night of June 20, 1906, plaintiff boarded a car for the purpose of going to her home near East Ninth street, in the City of Portland; that upon arriving at the place of her destination the conductor notified her that the car had reached her street, and led her to believe, and she did believe, that the car had stopped, and that she was to alight therefrom; that she thereupon left her seat, and passed out upon the platform or vestibule, where the conductor was standing with his hand on the bell-rope; that the night was dark, and, believing the car had stopped, she attempted to alight, and was thrown violently to the ground, and severely injured; that the conductor was standing near her, knew that she was about to alight from the car, and that it "was not stopped sufficiently long to allow" her to do so in safety, but nevertheless permitted her to attempt to alight with-out warning, and permitted the car to move forward while she was in the act of alighting, although he was in control thereof and could have prevented the same.

The answer denies the negligence charged, and for affirmative defense alleges, that plaintiff carelessly and negligently walked or stepped off the car before it had stopped at the crossing and before the conductor could detain her from so doing.

After the cause had been put at issue, plaintiff caused a subpoena to be served upon Mr. C. N. Huggins, secretary of defendant company, requiring him to appear before a notary public, at a certain time and place, to be

examined as a witness, and informing him that he would be required "to give evidence for plaintiff as to the names and residences of all witnesses of defendant in said action, and to produce and be examined on all written statements or other evidence which is in your hands or possession relating to or in any wise appertaining to said action." Huggins refused to obey the subpoena, for which reason plaintiff moved the court to strike defendant's answer from the file, and also objected to the admission of any testimony on its behalf, except as to the question of damage. This motion and objection were both overruled, and trial had before a jury, at the conclusion of which the court directed a verdict in favor of defendant, and plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Piggott & Finch* and *Mr. Henry J. Bigger,* with oral arguments by *Mr. James A. Finch* and *Mr. Bigger.*

For respondent there was a brief over the names of *Mr. Dan J. Malarkey* and *Mr. Ephraim B. Seabrook,* with an oral argument by *Mr. Arthur M. Dibble.*

Opinion by MR. CHIEF JUSTICE BEAN.

The motion to strike out the answer of defendant was properly denied for two reasons:

1. First. The statute provides that disobedience to a subpoena may be punished as a contempt, and, if the witness be a party, his complaint, answer, or reply may be stricken out. The word "party," as used in this statute, includes only parties to the action. Mr. Huggins was not a party, and the result of his disobedience to a subpoena cannot be visited upon the defendant: *Seeley* v. *Clarke,* 78 N. Y. 220; *Gulf, C. & S. Ry. Co.* v. *White* (Tex. Civ. App.) 32 S. W. 322.

2. Second. The statute provided for the taking of the deposition of a party to an action by the adverse party

(B. & C. Comp. § 826) was intended to allow his examination only when the evidence sought is pertinent to the issue, and probably only when material and necessary to make out the case of the party calling him. It cannot be used to compel the disclosure by an adversary of the names of his witnesses, the manner in which he expects to establish his case, or confidential reports or communications of his agents in relation to the matter in controversy: *Ex parte Schoepf*, 74 Ohio St. 1 (77 N. E. 276: 6 L. R. A. (N. S.), 325) ; *Cully* v. *Northern Pac. Ry. Co.* 35 Wash. 241 (77 Pac. 202). The information sought from Mr. Huggins, as appears from the face of the subpoena, would not have been competent as testimony on the trial.

3. It is difficult to determine from the complaint whether it was intended to charge defendant with negligence in suddenly starting the car while plaintiff was in the act of alighting, or in failing to notify her that the car had not stopped and permitting her to alight while it was in motion; but in either event there was no evidence tending to support the averments. Plaintiff was the only witness who testified on her behalf in relation to the accident or the manner in which it occurred. She says that when the car passed Eighth street the conductor, as was his custom, called out "Ninth Street!" indicating that the car was approaching that street, and she gave him a signal that she desired to get off at that place, whereupon he rang the bell for the car to stop, and it began to slow. As the car neared the crossing, she arose from her seat, passed through the rear door, by the conductor, who was standing in the vestibule, and, in attempting to alight, was thrown or fell violently upon the sidewalk. Her version of the occurrence is as follows:

"I stepped down with my right foot, supposing the car was standing still, and when I got—and the first thing I knew I was on the ground. What happened

when I stepped my left foot down I don't know, but I seemed to be—the first thing I knew I was landed on the ground just in a whirl, like that (indicating), right on my own siding, right on the sidewalk."

As to whether the car had in fact stopped at the time she attempted to alight, or was still moving, she does not know. In one part of her testimony she says:

"After we passed Eighth street I signaled to the conductor to stop the car, as I always did, and he put his hand up to the rope and signaled, of course, and it slowed down and stopped at my landing, and as far as I knew the car was standing still. I got up, and went to the door, and stopped, and steadied myself at the inner door, as was my custom always before trying to alight, and especially when I was alone."

In another place she says:

"I came along, as I said, and came out that door, and passed down the steps at my own landing, supposing the car was standing still. There was nothing to make me believe it was not standing still, and as I passed down, whether it started just as I stepped, or whether it was going, I could not say; but I know that I thought it was standing still, and I was at my own landing."

Again, when asked what made her think the car was standing still, she says:

"Well, just as I have always thought it, and the only thing I know about it, I came there and steadied myself to go down the steps, as I always did, because the last jerk of the car stopping always will pitch any one, and I always avoided against that, and I always steadied myself there at the inner door before walking down, and I did so that night, and then proceeded on my way, and as I stepped down I was thrown."

This is all the testimony on behalf of plaintiff on the question whether the car had stopped at the time plaintiff attempted to alight or was still moving. Whether the car started suddenly, while she was in the act of alighting, she is equally ignorant. In reply to a question by one of the jurors as to whether the conductor

rang the bell for the car to start as she was getting off, she says:

"Whether he was still ringing the bell to stop, or whether he was ringing to start it again, I do not know; but this one thing has been clear in my mind all the time: I could swear that he had his hand on the rope as I passed him, as I came the length of the car and passed him; that is all I have to say."

But in answer to the direct question: "Now, do you know whether, as a matter of fact, he rang the bell at any time?"—she answered:

"I don't know, sir; I could not tell that. I don't think any one could tell that."

4. Now, all that can be claimed from this testimony is that plaintiff does not know whether the car had stopped at the time she attempted to alight, or whether the conductor gave a signal to go ahead while she was in the act of alighting. The defendant, however, called the conductor and two persons, who were passengers on the car at the time, and they all testified positively and unequivocally that the plaintiff started to get off the car before it came to a stop, and that it was not suddenly started while she was in the act of alighting, and their affirmative testimony must be accepted as proof of the fact, notwithstanding the plaintiff's want of knowledge on the subject: *Pringle* v. *The Michigan* (C. C.), 52 Fed. 501; *Culhane* v. *New York Cen. & Hudson R. R. Co.* 60 N. Y. 135. Johnson, the conductor, says that, at about the time he gave the signal to stop for Ninth street, plaintiff arose from her seat, walked to the back of the car, and stepped off, just as the car was coming to a stop and while it was still in motion; that he did not think for a moment she was going to step off until the car stopped, but she did. Mr. McFarland, one of the passengers, testified that, after the signal to stop the car had been given by the conductor, plaintiff got up, moved toward the rear platform, and, after the car had slowed to about a mile an

hour, and was within three or four feet from the crossing, and still in motion, stepped off, and that there was no sudden starting of the car while she was in the act of doing so. Mr. Hickey, another passenger, says the car was in about four feet of the crossing, and was moving slowly when plaintiff stepped off, and there was not a sudden starting of the car. This is all the testimony bearing upon the manner of the accident or the conduct of the parties. It clearly and undisputably shows that there was no negligence on the part of defendant, and that plaintiff was injured because she attempted to alight from a moving car, without any necessity or seeming necessity for so doing, and that she was not advised or requested to do so by defendant's servants. This was negligence of such an obvious character that the court was justified in directing a verdict against her: 3 Thompson, Negligence, § 3013.

5. It is argued, however, that defendant is liable because the conductor did not notify plaintiff that the car was still in motion and warn her against the danger of her contemplated act; but the evidence does not show that the conductor knew, or had any reason to believe, that she was intending to get off the car until it had stopped.

6. Plaintiff was of mature years and in possession of all her faculties, and we are not advised of any rule of law making it negligence for the conductor of a street car, under such circumstances, to warn such a person of the danger to be apprehended in alighting from a moving car. The facts do not bring the case within the rule announced in *Smitson* v. *Southern Pac. Ry. Co.* 37 Or. 74 (60 Pac. 907). There the injured party was a passenger on a steam railway. As the train approached her destination it stopped, and she was invited by one of the company's servants to alight; but, as she was in the act of doing so the train suddenly started, injuring her. The facts, therefore, are entirely different from those shown

in the present case. Here there was no invitation or request to plaintiff, from any employe or agent of defendant, to alight from the car, and they had no reason for supposing or believing that she would attempt to do so, while the car was in motion. There is, therefore, no ground upon which the defendant can be charged with negligence by reason of the failure of the conductor to notify plaintiff that the car was still in motion, or that she was liable to be injured if she attempted to alight before it stopped.

Nor is this a case where negligence can be implied from the mere fact of the accident. Actions of this kind are not exceptions to the general rule that the burden of proof is on the plaintiff to prove negligence, when it is denied by the defendant. There is a class of cases in which negligence may be presumed from the relation of the parties and the manner of the accident: Booth, Street Railways, § 361; *Goss* v. *Northern Pac. R. R. Co.* 48 Or. 439 (87 Pac. 149) ; *Chicago City Ry. Co.* v. *Catlin*, 70 Ill. App. 97; *Bradley* v. *Railway Co.* 94 Mich. 35 (53 N. W. 915). But this is not one of them.

It follows that the judgment must be affirmed, and it is so ordered.        AFFIRMED.