ILLINOIS CENTRAL RAILROAD CO. v. FREDERICK T. MASSEY.

[53 South. 385.]

1. RAILROADS. *Passengers. Announcement of station.*

The customary announcement of a station by the flagman of a passenger train, with the words, "All out for" such station, and his fastening back of the door of the car, was not an invitation to passengers to get off accompanied with an assurance that the train had arrived at the station, but was merely the imparting of information to such passengers as might desire to get off at the station, so that they could be in readiness to do so.

2. SAME. *Same. Passenger alighting at station. Care required.*

Even if a passenger did interpret such announcement as an invitation to him to alight, with an assurance that the train had stopped, he would not thereby be absolved from the duty to use due care; and where a passenger, upon such anouncement, repaired to the platform, while the train was moving, at a place with which he was perfectly familiar, so that the least observation would have shown him that the train was in motion, and, without looking or taking any precaution to see if the train was moving, stepped off, and was run over and injured, he could not recover.

3. SAME. *Same. Same. Negligence of carrier.*

The flagman, standing on the platform, had a right to assume that the passenger would not attempt to alight before the train had stopped, and was not negligent in failing to warn him not to get off, as he descended the steps.

FROM the circuit court of Tate county.

HON. WILLIAM A. ROANE, Judge.

Massey, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in favor of plaintiff the defendant appealed to the supreme court. The opinion of the court states the facts of the case.

*Mayes & Longstreet,* for appellant.

In the light of the testimony, construing it most favorably for appellee, a peremptory instruction should have been given for appellant. Appellee's own testimony shows conclusively that he was guilty of negligence, and that this negligence not only contributed to his injuries, but was the direct cause. Appellee does not even deny having admitted, as testified to by witness for appellant, that his injury was caused by his own mistake and by his own carelessness and foolishness.

It is not claimed by appellee that the accident was caused by failure of the train to stop at Coldwater, or by its failure to stop for a sufficient time, or by any unusual jerking or jolting. It is not even claimed that appellee was thrown off. The train had not even reached the depot at Coldwater. Appellee admits that he simply walked from his seat to the platform and from the platform down the steps to the ground without making an attempt to notice whether the train had stopped or not. He did not look out for the depot which he could have seen beyond him by the lights; did not look at the ground beneath him; did not pay any attention to whether the train had stopped or not; and did not give any attention to the running of the train.

It is to be borne in mind in connection with this testimony that he was familiar with the topography there, and if appellee had exercised the simple precaution of looking he would have discovered that he was opposite the cotton platform and was some distance from the depot. But no, without even stopping, without using any of his faculties, without taking the slightest precaution for his safety, he walked off a moving train which had not even reached the depot, as he could have easily ascertained by not merely the slightest precaution, but by simple observation.

The testimony of appellee fully justifies his own confession to others that his accident was due to his own carelessness and foolishness, and is sufficient to fully exonerate the railroad company.

The only negligence alleged against the appellant railroad company is that of the flagman, in calling "All out for Coldwater" before the train stopped. The question as to whether or not this constitutes negligence on the part of the railroad company is ably discussed in the case of *Mearns v. Central Railway Co.,* 139 Fed. 543. And see *England v. B. & M. Railroad Co.,* 153 Mass. 490, 27 N. E. 1; *Brown v. N. Y., etc., R. Co.,* 63 N. E. 941; *Holyman v. Kanawha, etc., R. Co.,* 64 S. E. 536; *McDonald v. Boston, etc., R. Co.,* 2 Am. & Eng. Railway Cases, U. S. 293; *Shannon v. Boston, etc., R. Co.,* 2 Atl. 678; *Garrett v. Manchester, etc., R. Co.,* 16 Gray, 501; *Chicago, etc., R. Co. v. Londoner,* 58 N. W. 434, 70 N. E. 1006; *Pittsburg R. Co. v. Miller,* 33 Ind. App. 128.

This court has held in the case of *Alabama, etc., R'y Co. v. Jones,* 86 Miss. 276, 38 South. 545, that a passenger is guilty of contributory negligence as a matter of law, who sustains injuries caused by his own contributory negligence.

In the present case appellee admitted to others his own mistake and carelessness and all the testimony clearly shows that it was this mistake and carelessness which was the direct cause of the injury.

*J. W. Lauderdale,* for appellee.

The case was very properly submitted to the jury, and their verdict and the judgment of the court below, will not be disturbed by this court. This court has repeatedly held that cases are rare in which the question of negligence should be taken from the jury and decided by the trial court. *Bell v. Railway Co.,* 87 Miss. 234; *King v. Railway Co.,* 87 Miss. 270; *Mercantile Co. v. Railway Co.,* 87 Miss. 675; *Allen v. Railway Co.,* 88 Miss. 25; *Railway Co. v. Bethea,* 88 Miss. 119; *Railway Co. v. Hardy,* 88 Miss. 732; *Stevens v. Railway Co.,* 81 Miss. 195; *Illinois Central, etc., R. Co. v. Daniels,* 50 South. 721; *Baltimore, etc., R. Co. v. Mullen,* 2 L. R. A. (N. S.) 115.

Contributory negligence is an affirmative defense and the burden of proof thereof rests on the defendant. *Railway Co. v. Hardy*, 88 Miss. 732.

It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say as a matter of law, that contributory negligence is established; and, even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question, it is one for the jury. *Johnson v. Southern, etc., R. Co.*, 97 Pac. 521; *Worth v. Kallas*, 162 Fed. 306; *Hilgar v. Walla Walla*, 97 Pac. 498; *Chicago, etc., R. Co. v. Byrum*, 38 N. E. 578; *Union, etc., R. Co. v. Porter*, 56 N. W. 808; *Terre Haute, etc., R. Co. v. Buck*, 49 Am. Rep. 168.

The carrier must exercise the highest degree of care to secure the safety of its passengers, and is responsible for the slightest neglect, if any injury is caused thereby. A carrier's duty is not ended with carrying a passenger safely from one point to another, but the carrier must set the passenger down safely, if in the exercise of the utmost care, it can be done, and the question as to whether or not a passenger in alighting from a train of railroad cars in obedience to the direction or command of a conductor or brakeman thereon, is guilty of contributory negligence, depends upon the particular circumstances of each case. *Evansville, etc., R. Co. v. Althon*, 51 Am. St. Rep. 303; *Illinois, etc., R. Co. v. Daniels*, 50 South. 721.

The announcement of the flagman, "All out for Coldwater," under the circumstances, amounted to not only an invitation to appellee to alight from said train, but it amounted to a command. Appellee had heard the engineer blow the whistle for the station. The station had been announced, and after waiting the usual time for the train to reach the station, the flagman threw open the door, took up his lantern, and made the announcement, "All out for Coldwater," following the custom done at every station

when the train had arrived at the depot and stopped. *Illinois, etc., R. Co., v. Daniels,* 50 Miss. 721.

Under all the facts shown in evidence and the circumstances surrounding the accident, whether the person injured was guilty of contributory negligence at the time is a question within the province of the jury to decide, and one that the court cannot rightfully take from them. *Pennsylvania, etc., R. Co. v. Keane, Admr.,* 41 Ill. App. 317.

In the case of *Warner v. Baltimore, etc., R. Co.,* 168 U. S. 346, 70 L. Ed. 491, it is said: "The duty owing by a railroad company to a passenger, actually or constructively in its care, is of such a character that the rules of law regulating the conduct of a traveler upon the highway when about to cross and the trespasser who ventures upon the track of a railroad company are not a proper criterion by which to determine whether or not a passenger who sustains injury in going upon the track of the railroad company was guilty of contributory negligence. A railroad company owes to one standing towards it in the relation of a passenger a different and higher degree of care from that which is due to mere trespassers or strangers, and it is conversely equally true that the passenger under given condition has a rigl t to rely upon the exercise by a road of care, and the question of whether or not he is negligent under all the circumstances must be determined on due consideration of the obligation of both the company and the passenger." See also *Chicago, etc., R. Co. v. Slepp,* 164 Fed. 792, 90 C. C. A. 438; *Chattanooga R. R. Co. v. Downs,* 106 Fed. 641, 45 C. C. A. 511; *Chesapeake R. R. Co. v. King,* 99 Fed. 251, 40 C. C. A. 432, 49 L. R. A. 102.

There is no denial by appellant company that an invitation was given, but it is contended by appellant that because appellee failed to stop, look and listen, he is not entitled to recover. It is common knowledge among travelers that when the station is

announced and the invitation is given to alight from the train, it is the duty of the passenger to at once alight. It is also common knowledge that railroad companies and their employes do not wait for passengers to make investigations after the invitation has been given to alight. Such passengers must either disembark from the train or run the risk of being carried on to the next station.

If there had been nothing more than the calling of the station, or the fastening of the door back, perhaps it could not be said that appellee was justified in supposing that he had been invited by the flagman to alight at that place. But when these circumstances are taken into consideration, in connection with the facts that the station had previously been announced and that the usual time had elapsed for the train to reach the depot, that the door was thrown open and fastened back, and the announcement by a man in authority, "All out for Coldwater," was made; and the further fact that it was at night and very dark; and the only object that appellee could see was the south-bound passenger train, which was due to leave upon the arrival of his train pulling from the station of Coldwater, and still the further fact that when appellee walked out on the platform there stood the flagman, knowing that he had announced to the passengers that they were at Coldwater, and not one effort did he make to prevent appellee from making the fatal step, until it was too late. Therefore, under the facts and circumstances surrounding the injury sustained by appellee, it was proper for the question of contributory negligence to be submitted to the jury.

McLAIN, C.

This is an appeal by the appellant railroad company from a judgment for $5,000, rendered against it in the circuit court of Tate county in favor of the appellee, for injuries sustained by him in stepping off of a train of appellant company while it was

in motion.   The controlling question involved in this cause is:
Did the trial court commit error in refusing the peremptory in-
struction asked by appellant?

Before passing upon the question, it is necessary for us to sur-
round ourselves with the leading facts.   The plaintiff below was
a young man, between twenty-one and twenty-two years of age,
living on a farm some eight or nine miles west of Coldwater.
On the morning preceding the evening on which the injury com-
plained of was committed, he and Mr. A. H. Hurt, an uncle,
took passage at Coldwater, on defendant's south-bound train,
for Batesville.   That evening they boarded at Batesville de-
fendant's north-bound train on return trip to Coldwater, taking
seats in the smoking compartment, which was the rear half of
the middle coach on the train.   As the train approached Cold-
water, the engineer sounded the whistle at the usual place.
Soon thereafter the flagman entered the rear end of the smoker,
where plaintiff and his uncle were riding, and called out, "Cold-
water."   He then proceeded to the door separating the colored
compartment from the smoker, and again called out, "Cold-
water."   He then returned to the rear door of the smoker, threw
the same open and propped it, and called out, "All out for
Coldwater."   With lighted lantern in hand, he crossed over the
platform of the rear end of the smoker onto the platform of the
forward end of the ladies' coach, and made the same announce-
ment to passengers in that coach, and then stepped back again
on the forward end of the ladies' coach and stood on the lowest
step, with lighted lantern in hand, waiting for the train to stop.
He was then on the east side of the train.   This was about
6:30 p. m., and it was dark.

After this announcement by the flagman, and while he was
still standing on the steps, the plaintiff came out of the rear door
of the smoker on the platform, being followed by his uncle, and,
without stopping to look out, turned and descended from the

car, on the east side of same, to the ground, holding to the iron rail as he alighted, and he fell. In the fall, one of his hands was crushed by the wheels of the train. It was so badly mutilated and crushed that it was necessary to amputate same above the wrist, which was done that night. His uncle, who came out on the platform with him, did not attempt to descend the steps, stating on the trial of this cause that he discovered the train was moving while he was standing on the platform, by seeing the train pass a telegraph pole. He testified that he, too, thought the train had stopped when he arose from his seat, and did not know any better until he saw the train pass said telegraph pole, and at that moment he saw his nephew stepping to the ground, and he called out to him to stop, but it was too late. The flagman states, also, that when he saw the plaintiff stepping off the last step to the ground he called out to him to stop, but it was too late. Plaintiff states in his testimony that, after the flagman called out, "All out for Coldwater," he thought the train had stopped.

The evidence shows that he had traveled some upon trains, and was familiar with this depot and all of its surroundings, having taken the train there often, and had visited the town of Coldwater many times. Upon the trial of this cause, he admitted in his testimony that he made no effort whatever to ascertain if the train had stopped, and did not look for the depot or any other familiar object. He admits that he paid no attention to whether the train was running or not, and made no effort to ascertain if the train had reached the depot. When asked, among others, the following question, he answered: "Q. You did not take notice to see whether it was running or not? A. No, sir." In another part of the record he was asked: "Q. Didn't you say, just now, that you did not pay any attention to whether it was running at all? A. Yes, sir. Q. The flagman was out there on the platform? A. Yes, sir.

Q. Had his lantern? A. Yes, sir. Q. And was shedding light around? A. It was lighted. Q. Could not you see, from that light, where the train was? A. I went out to the door and turned. I had been watching the steps. Q. You gave your solid attention to the steps? A. Yes, sir. Q. When you got on the steps, didn't you pause a little? A. No, sir; I went straight down. Q. It was not so dark that you could not see a big thing like that? If you had seen the platform, you would have been satisfied the train was not at the depot? If you had given any attention, you would have seen, by the light of the lantern, that the train was running? A. I might. Q. And you did not try? A. No, sir. Q. You could also have seen this cotton platform, if you had tried to see it? A. I could if I had tried. Q. You gave no attention to see whether the train was still running or not? A. No, sir. Q. Then you made no effort to see whether you had reached the depot? A. I just relied on what the flagman said. Q. Did you look that night to see whether there was any light up there or not? A. No, sir. Q. If you had looked up there, you would have seen the lights of the depot building? A. If I had looked out. Q. And you made no effort to see? A. I did not look around."

Dr. A. J. Wilson, who performed the operation upon plaintiff, testified that he said to him, just before the operation, that he had acted foolishly in getting off, but was not satisfied that the train was in motion when he got off. J. L. Christie testified that, just before the operation this occurred between him and appellee: "I said, 'Fred, how did all this happen anyway?' And he said: 'It was just carelessness. I thought the train had stopped, and got out on the platform, and stepped off, and fell off, and it cut my hand off.'" This accident occurred seventy-five or one hundred yards south of the depot, opposite the cotton platform, which could have been seen, if looked for, and the lights of the depot were visible from this point. The above are the leading facts in the case.

Plaintiff contents that the announcement of the flagman, "All out for Coldwater," under the circumstances, amounted not only to an invitation to the plaintiff to alight from the train, but it amounted to a command; that this announcement meant that the train had reached the depot, and had stopped for the purpose of discharging passengers, and if there were any who desired to alight at said station it was time for them to get off. From this it appears that plaintiff seeks to justify and excuses his conduct upon that occasion, and to fasten liability upon defendant, by taking the ground that the calling out, "All out for Coldwater," by the flagman, and the opening and fastening back of the door by him, and his failure to warn him of the danger when he descended the steps, constituted an invitation to him to alight, and was an assurance on which he was justified in relying that it was safe to do so.

Upon the facts of this case we do not concur in this view. "Assuming that the action of the flagman, in calling the station and fastening back the door was to be regarded as an invitation, it was clearly not an invitation to alight from the train while it was moving, but from the train after it had come to a stop. It did not authorize the plaintiff to attempt to get off the train when in motion; but we do not think the action of the flagman can, as a matter of law, be regarded as an invitation. It was, at the most, simply an announcement that the train was near the station, and would presently stop, and was given in order that passengers intending to alight there might prepare themselves to do so when the train stopped." *England v. B. & M. R. R. Co.*, 153 Mass. 490, 27 N. E. 1. It must be evident that the announcement made on this occasion by the flagman was such as is usually made on all trains, and is done in the interest of the passengers, and it is construed to mean that such as may desire to get off may get themselves in readiness to do so. It is not an invitation to get off, accompanied with an assurance that the train has arrived at its destination.

There is no usage or custom on the part of defendant road, or any railroad, requiring that the station shall not be called out until after the train has stopped; but, on the contrary, the usage and custom requires just exactly what the flagman did do on this occasion. However, should a passenger interpret this announcement, as plaintiff did on this occasion, that it was an invitation to him, with an assurance that the train had stopped, this did not absolve the plaintiff from all care, and throw upon the defendant the absolute duty of insuring his safety; nor could plaintiff, under these circumstances, abandon all prudence, caution, care, and common sense, and practically cease to use his own faculties. When he arrived upon the platform, the train was running, and it is clear, under the facts and circumstances in evidence, that the least observation on the part of the plaintiff would have shown him that the train was in motion. The lights of the train shining through the car windows, the light of the lantern of the flagman, the motion of the train, the cotton platform and other stationary objects, were all there within the range of his vision to give him his bearing, if he had only looked. Bear in mind that he was familiar with the topography, and the slightest observation would have shown him the train had not stopped. This is evidenced from the facts in this case in many ways, but especially is it emphasized by the testimony of his uncle, who was on the platform immediately behind him, who said he discovered the train was moving by seeing the train pass a telegraph pole.

It is contended that the defendant is guilty of negligence, because the flagman failed to warn him not to get off as he descended the steps. We think this is a strained and unreasonable construction to place upon the action of the flagman, construed in the light of all facts. The flagman did not know, and could not have known, that plaintiff intended to step off the train; but, on the contrary, he had a right to assume that he

would not.   In the case of *Mearns v. Railroad of N. J.,* 139
Fed. 545, 71 C. C. A. 333, the court, in passing on a case in-
volving about the same facts as this cause, said: "Even though
it be assumed that the porter knew that the train was in motion,
and that he saw the plaintiff step down from the platform, this
falls far short of showing that he knew, or ought to have known,
that plaintiff intended to step off.   It is so common for eager
passengers, in approaching a station, to descend to the last step
in order to avail themselves of the first opportunity to alight,
that a guard, who called out to a passenger in such a situation,
'Don't get off; the train has not stopped,' would probably be
denounced as an impertinent interloper."

We are of the opinion that the accident which befell the plain-
tiff was attributable to his own lack of care, and was not due to
the negligence of the defendant.

PER CURIAM.   For the reasons set forth in the above opinion
by the commissioner, the judgment is *reversed* and cause *re-
manded.*