## Louisville Railway Company v. Furnas.

(Decided October 23, 1913).

### Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

Street Railroads—Personal Injuries—Risk Voluntarily Assumed.—A passenger on a street car who gets off on a curve just before the car reaches its stopping place to avoid walking back to the crossing, and is struck by a trailer attached to the car that he was riding on, cannot recover of the company for his injuries which were the result of a risk voluntarily taken by him, he having seen the trailer when he got on the car and knowing that it was there.

FAIRLEIGH, STRAUS & FAIRLEIGH, WILLIAM W. CRAWFORD and HOWARD B. LEE for appellant.

KOHN, BINGHAM, SLOSS & SPINDLE and ARTHUR H. MANN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Fourth street and Twenty-eighth street in Louisville run north and south; Walnut street and Dumesnil street run east and west. W. C. Furnas boarded a car of the Louisville Railway Company at Fourth and Walnut streets to return to his home on Dumesnil street. The car went west on Walnut, thence north on Twenty-eighth street until it reached Dumesnil. There it turned into Dumesnil street. The car had a trailer behind it, Furnas being in the front car. The regular stop was a few feet west of the crossing; but while the car was passing around the curve, Furnas stepped from the car on the west side just about the time he got opposite the property line of Dumesnil street; and soon thereafter was struck by the trailer, which knocked him down, and one of his legs was cut off. He brought this suit to recover for his injuries. On a trial of the case in the circuit court a verdict was rendered in his favor for $5,600. The circuit court refused a new trial, and entered judgment on the verdict. The defendant appeals.

The first question made on the appeal is that on the evidence the court should have instructed the jury peremptorily to find for the defendant. The only two witnesses introduced as to how the injury occurred are W. C. Furnas and Lee Payne. The testimony of Furnas put in narrative form is as follows:

"I took the car at Fourth and Walnut streets; paid my fare; the car went west on Walnut to Twenty-eighth street; out Twenty-eighth street to Dumesnil and at Dumesnil, the car turned west. I was on the motor car, and just before the rear platform of the motor car passed off of twenty-eighth street, I alighted from the car, as it was going slowly around the curve at a point I believe about the property line of Dumesnil street. I took one step away from the car and was then struck in the back by the trailer. I was dragged some distance and finally pushed myself out from under the car except my left leg which the trucks ran over just above the ankle. I had taken one step toward the curb on Twenty-eighth street. At the time there was a very sharp curve at Dumesnil and Twenty-eighth streets. There was some man alighted before me. It was customary at that time for people to get off at that place. I was struck in the back. The conductor of the car said nothing to me as I went to get off. The car was going at a slow rate; it was going at such a rate that I deemed it safe to get off while it

was moving. I did it every day at the same place. I had been living there then about eight years.''

Cross-examination: ''I am fifty-two years old; am in business for myself on Fourth avenue. I was in the daily habit of taking the Walnut street car and going down to Twenty-eighth and Dumesnil. I left the car to go east on Dumesnil street to my house. I have been an official reporter, and have been about the courts a good deal. It was between five and six o'clock; it was light; there was a trailer on the car; I was familiar with the location of the tracks at Twenty-eighth and Dumesnil streets; had been using the location every day for several years. When I stepped off the car was still moving. I momentarily forgot the trailer. The trailer was a very unusual thing for the cars I went on and I forgot it was there at that time. When I got off I was facing toward the west side. I just stepped down off the rear platform and took one step over toward the curbing. I had fully gotten off the car—was not thrown off it. Almost immediately something hit me—a very short time—I suppose the first thing I felt after reaching the ground was the knock of the trailer; there was an instant between. I passed the conductor as I went to leave the car. He was in his place; he was talking to some one on the platform, and whether I went behind him or in front of him, I cannot tell. The car was just turning the corner as usual; the stopping place was around the corner on Dumesnil street. The car that I was on was turning the curve; the trailer had not quite reached the curve. I saw the trailer when I got on the car; I did not suppose the trailer had been taken off; I did not think of the trailer at all, when I got off. I intended going east across Twenty-eighth street.''

Lee Payne testified as follows:

''I was standing on the corner, on the opposite corner, and Mr. Furnas got off the car just about opposite the line of Dumesnil street. He got off the car and the car had a trailer behind it and after he had gotten off the car and turned around this way, the trailer came up and struck him, and he fought the car and he fell beneath the car and the car ran over his foot. I was standing about thirty feet from the accident. The car was going as usual in going around the curve. After the first car got around the curve it picked up speed. Mr. Furnas got off opposite the property line of Dumesnil street. There was another man got off the car just ahead of Mr. Furnas I think, off the front car. When Mr. Furnas got

off the car, he took a step east. He got off west of the track and took a step east. At that time he was strcuk by the car, I think on his left.''

It is earnestly argued that the danger from the trailer was a hidden danger that Furnas was ignorant of, and that the defendant was negligent in not warning him of the danger or in allowing him to get off in the presence of such danger without warning. But it does not seem to us that the evidence is sufficient to show negligence on the part of the street car company. Furnas himself says that he saw the trailer when he got on the car. He also says that it was light and there was nothing to prevent his seeing it when he got off, that he did not suppose that it had been taken off, and that he just did not think of it at all. He says that it was unusual for a trailer to be run on the cars he went on, but he does not state that it was unusual to run trailers on this line. He states that he had traveled on the line daily for eight years, and was familiar with it. He does not state that the conductor knew he was getting off at this point. On the contrary, he says he does not know whether the conductor saw him or not. One other person got off before he did and it was unusual for persons to get off at that point, although the regular stopping place of the car was a few feet further west. It is not uncommon in any city where the cars are open and not furnished with gates, for men to step from the cars as they are slowly going around curves on crossings, or as cars are coming to a stop. To say that the company is liable to all such persons who happen to get injured, would be to ignore the rule that the carrier is only liable where he has been negligent. If the conductor had known or had reason to know that Furnas was in danger in getting off, a different question would be presented. The company had a right to run a trailer behind the motor car. Furnas would have been in no danger if he had stayed on the car until it reached its regular stop a few feet further on. The cars were going around the curve to the west; the motor car had reached the curve and this threw the rear end of the motor car out to the east, thus enabling Furnas when he had stepped off on the west side and on the inside of the curve, to land nearer the track than he would have done if the car had not been on a curve. The trucks of the trailer not having reached the curve, it extended out beyond the tracks the usual distance. As Furnas was going east he only stepped far enough away from the motor

cer to be safe from it; and so while he was in this position he was struck by the front of the trailer before the trucks of that car reached the curve. It was an accident that would seldom happen, as passengers when they leave a street car usually continue to go from it.

If Furnas had stepped from a railroad car under similar circumstances on a curve, and had been struck by a sleeper in the rear of the car and not on the curve, would it not be conceded that the carrier was not liable; although persons living nearby usually got off at the curve and the train he rode on did not usually carry a sleeper? For persons who step from moving cars a few feet before they are to come to a stop simply to avoid walking a short distance, take the risk. It is true that to step from a car moving slowly is not *per se* negligence, still it is a voluntary taking of a risk and the carrier is not responsible for the risk thus voluntarily assumed by the passenger, unless he is negligent in some way. There is nothing in the evidence to show that trailers were so unusual on this line that a person of ordinary prudence should not have expected a trailer behind the car on which he was riding; and on the contrary, Furnas says that he saw the trailer when he got on and in substance says that he knew it was there; for he says he did not suppose it had been taken off.

He having traveled on these cars every day for eight years, there seems to be no reason why the conductor, if he had known he was getting off, would not have supposed that he understood what he was doing, and was able to take care of himself. It is so common for people to get off cars just before they stop that to require the carrier to look out for such persons and guard against their getting off, would be to impose a duty almost impossible of performance. Of course the carrier when he knows or has reason to know that persons are getting off, must use proper care for their protection, and do nothing to add to their peril; but beyond this, we do not see any just ground for liability. To say that because persons often got off the cars here, the conductor should have anticipated that some of them might step off before the rear car reached the curve, and not get far enough from the tracks to avoid being struck by it; and so should have been on the outlook and have given Furnas warning of the danger in so doing, would be to require him to anticipate what could not happen if the passenger followed the usual custom of stepping out from the car and going

on away from it after stepping down. As the car was moving so slowly, Furnas had plenty of time for this, had he acted as persons usually do. In addition to this, if Furnas had waited an instant longer before getting off, both cars would have been on the curve, and he would not have been struck by the trailer. The accident was due to the concurrence of two unusual circumstances. First, he got off just at the point where one car was on the curve and the other was not; second, intending to go east and getting off on the west side of the car, he only stepped far enough from the car to be out of the way of the car he was riding on. It would be carrying the doctrine of care on the part of the conductor entirely too far to require him to anticipate not only that a person might get off at this corner while the car was moving, but also that the two above circumstances would coincide. Saret v. Louisville R. R. Co., 113 Ky., 15; Gribbins v. Ky., &c., R. R. Co., 150 Ky., 277.

We, therefore, conclude that upon the facts shown the circuit court should have instructed the jury peremptorily to find for the defendant.

Judgment reversed and cause remanded for a new trial.