[No. 12913.   Department Two.   January 4, 1916.]

ETHYL SUMNER, *Respondent*, v. GRAYS HARBOR RAILWAY & LIGHT COMPANY, *Appellant*.[1]

CARRIERS — INJURIES — SETTING DOWN PASSENGERS—NEGLIGENCE—EVIDENCE—SUFFICIENCY.  There is no evidence of negligence to sustain recovery for injuries to a passenger in alighting from a street car, on a foggy night, where, after the destination was announced, she came to the vestibule and directed the conductor's attention to her suitcase, and immediately stepped off the car while it was gently coming to a stop, supposing that it had stopped, there being no sudden jerk, the street surface being smooth and safe and the car stopping within ten or twelve feet; since the announcement of the destination was not an invitation to alight until the car stopped, and under the circumstances the conductor was not negligent in failing to give notice that the car was still in motion.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered April 24, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in alighting from a street car.   Reversed.

*Bridges & Bruener*, for appellant.

*F. W. Loomis*, for respondent.

PARKER, J.—The plaintiff seeks recovery of damages which she claims as the result of personal injuries caused by the negligence of the defendant's servant while she was alighting from one of its street cars.   Trial before the court and a jury resulted in verdict and judgment in favor of the plaintiff in the sum of $208.36, from which the defendant

[1]Reported in 154 Pac. 126.

has appealed.    The principal contention of counsel for ap-
pellant is that the trial court erred in denying their motion
for directed verdict in appellant's favor, made at the close
of the evidence for the plaintiff, and also at the close of all
the evidence.

At about nine o'clock on the evening of November 11, 1914,
the respondent was a passenger on one of appellant's street
cars, in Aberdeen.    She was on her way home, expecting to
leave the car at Washington street, at which point she
usually left the car when returning to her home from the
business portion of the city.    It will be conducive to ac-
curacy to tell the story of the incidents immediately pre-
ceding the accident in respondent's own language.    She was
asked and answered in her testimony as follows:

"Q.  When you got on the Heron street car did you tell
the conductor where you wanted to go?    A. Not when I
got on.  Q. Did you later.  A. I think when he called Wash-
ington street I just nodded my head at him. . . .  Q.
Always got off at Washington street?    A. While I was
living in that part of town I always got off at Washington
street. . . .  Q. How did you know it was your destina-
tion?  A. He called Washington street. . . .  Q. Where
was he when he called the street?  A. If I remember right,
I think he was about in the middle of the car. . . .  Q.
When did you get up?  A. When I thought the car was
about where I would get off; slacking up about enough.
. . .  Q. Did the conductor go out ahead of you or be-
hind you?  A. He went out and then I got up and went
out after him.  Q. Where was the conductor when you went
out?  A. He was in the vestibule. . . .  Q. What direc-
tion was he facing?  Toward you or facing some other—
A. He had turned around to pick up my suitcase, and he
would really be facing,—I can't tell the directions in Aber-
deen; facing towards the brewery out that door of the car.
Q. Was he picking up your suitcase as you came out of
the car?  A. As I stood in the door.  Q. As you came up
to the door what direction was he facing?  A. Facing me.
Q. Did you say anything to him?  A. I told him that was
my suitcase.  Q. Where was the suitcase?  A. Setting in

the vestibule.  Q. Where with reference to his position?  A. Sitting right at the back up as close to the rear of the car as could be.  Q. Sitting behind him or beside him or in front of him?  A. I think it would be at the side of him. Q. And then what did you do?  A. The last I can remember I went and took hold of the handle on the door to step out, and that is the last I can remember then.  Q. Did he say anything to you about the car not having stopped?  A. I didn't hear him.  Q. Why did you get off the car when you did?  A. Well, I thought the car had stopped, and I was supposed to get off when the car stopped.  Q. Could you see that it had not stopped?  A. No, it had stopped apparently to me.  The fog was so thick—I didn't feel any motion of the car.  Q. Was the fog any thicker than usual on that night?  A. Yes, sir, very thick. . . .  Q. You could see just as well as if you had been outdoors all the while?  A. Well, I wasn't outside of the car when I last remember.  That is, I wasn't out onto the pavement.  The last I can remember is taking hold,—just as I reached for the handle of the car and stepped down onto the first step. Q. Did you see anything that night?  Could you see the objects on the street or anything that night?  A. Not plain. . . .  Q. Did you wait at the vestibule for any length of time, for a moment?  A. I hesitated there.  I thought he would get the suitcase picked up.  Q. The car was still in motion at that time?  A. It must have been.  Q. You knew it was still going?  A. Yes, while I was standing in the door.  Q. You say that you stepped out and took hold of the handle of the door, was it, or of the steps?  A. Just right there as you step out. . . .  Q. When did you ask the conductor for your suitcase?  A. Just as I stood in the vestibule door.  As I went out I looked where it was left and it was gone.  Just then I said to him: 'That is my suitcase.' . . .  Q. As the conductor turned around in a southerly direction over towards the brewery to get your grip, you, thinking the car had stopped, stepped off the car?  A. I don't know whether I stepped off or fell off.  The last I can remember is when I took hold of the handle. . . . Q. And the conductor at that time was just turning around getting the suitcase in the back of the vestibule?  A. Yes, sir. . . .  Q. You say you don't remember after you stepped off, fell off, or whatever happened that night.  You

say it was still in motion? A. It must have been, but I thought it was not. I didn't remember anything until I got in my house."

Other evidence shows that respondent stepped or fell to the ground while the car was moving slowly, and that it thereafter moved some ten or twelve feet before coming to a full stop. It also appears that the car was possibly a few feet beyond the usual stopping place when it came to rest. It does not appear, however, that there was any difference in the surface of the street at any point alongside of the track at or between the usual stopping place of the car and the place where it actually did stop, assuming that it really passed the usual stopping place. So, so far as the surface of the street is concerned, one place was as safe to alight as another within these limits. There were no gates or doors at the sides of the vestibules of the car for the conductor to open or close, as in some cars. There was no jerk or sudden acceleration of speed of the car which might throw one off his balance or furnish the least cause for his falling. The car was gently coming to a stop. There is nothing in the evidence indicating that respondent was not in full possession of all her faculties, both mental and physical. She was of mature years. This version of the facts we think is as favorable to respondent as the evidence will admit of.

It seems clear to us that there is no possible ground of negligence on the part of appellant upon which the respondent can recover, except it might be said that the conductor was negligent in failing to warn her of the fact that the car had not stopped when she stepped off. Manifestly, there was no affirmative act of negligence whatever committed by appellant or any of its servants contributing to respondent's injuries. Counsel for respondent call our attention to a number of decisions holding that it is not contributory negligence as a matter of law on the part of a passenger, when a station or stopping place is announced, for him to get up and proceed to the platform with a view of alighting. These

decisions are of no aid here.  Other decisions render it plain
that such an announcement is not of itself an invitation to
a passenger to alight before the train or car comes to a full
stop.  So the fact that the conductor announced Washing-
ton street as the stopping place then being approached and
that respondent, in response thereto, got up and proceeded
to the platform, argues little or nothing here.  Such facts
do not show an invitation to respondent to alight before the
car came to rest, nor do they show that the conductor had
any such intent, nor do they argue that the conductor had
any reason to believe that the respondent would attempt to
alight before the car came to rest.  According to the re-
spondent's own testimony, she was standing in the doorway
and directed the conductor's attention away from her to
her suitcase, and saw him partly turn to pick it up, im-
mediately preceding her stepping off the car.  The real
question is, conceding all these facts in the light most favor-
able to respondent's contention, was the conductor negligent
in failing to warn respondent that the car was in motion.
We think it must be decided, as a matter of law, that he
was not negligent in that respect.

Of the decisions of this court relied upon by counsel for
respondent, our attention is called to *Brown v. Seattle City
R. Co.*, 16 Wash. 465, 47 Pac. 890, and *Ranous v. Seattle
Elec. Co.*, 47 Wash. 544, 92 Pac. 382.  In the *Brown* case,
the car was standing still when the plaintiff arose to go out,
and suddenly, when she was stepping to the ground, the car
started, throwing her to the ground and injuring her.  In
the *Ranous* case, while the plaintiff was getting ready to
step off the car, it apparently being about to come to a stop,
its speed was suddenly accelerated, and the lurch caused by
such acceleration threw plaintiff onto the street.  In these
cases, therefore, there was manifestly a positive affirmative
negligent act on the part of the company contributing to
the injuries for which damages were claimed.  We have no
such condition here.

In *Morris v. Illinois C. R. Co.*, 127 La. 445, 53 South. 698, 31 L. R. A. (N. S.) 629, there were involved conditions similar to those before us. In answering contentions of substantially the same nature as here made, Chief Justice Breaux, speaking for the court, observed:

"The train was still in motion. Plaintiff testified that it was in motion, but that he was not aware of it at the time. The question arises: Did it not devolve upon him to satisfy himself before alighting that the train was standing ready to permit passengers to alight? If a passenger, who has every reasonable opportunity to assure himself that the train is at full stop, fails to make inquiry, he cannot hold others liable for damages in case he alights while it is in motion and is hurt. There were lights at the depot; near the depot there were visible objects, although it was in the night, whereby it was possible to satisfy himself that the train was still moving; besides, the motion of the car is of itself a warning that the train is still moving and has not come to a full stop.

"Plaintiff's position is that there was negligence on the part of the flagman, who should have warned him of the danger and should have notified him not to attempt to alight. Unquestionably, that would have been a very proper act on the part of the flagman. The question is whether the company is liable for the failure of its flagman to thus notify and warn the plaintiff. That is not the trend of the decisions. . . .

"The flagman had seen plaintiff pass him. He was standing behind him on the steps. He, the testimony states, had no reason to infer that plaintiff would seek to alight at that particular time. It happens (it is within common knowledge) that passengers frequently step down to that step while on their way to alight without attempting to step off before the car has stopped. We are not led to infer from the testimony that the flagman had invited the passenger to step off. It is true, as before stated, that at about the time the whistle sounded for Kentwood he announced that the next stop was at that place. There is not in this announcement an invitation to alight before the train has stopped.

"The following is from the text of Thompson on Negligence [vol. 3, 2d ed., § 2845]: 'Ordinarily, a railway car-

rier of passengers is under no duty to assist adult passengers who are in apparent good health and possession of their faculties to get on and off its vehicles or to find seats for them; but its duty is limited to giving them a reasonable time and opportunity to do so without assistance, and this is especially true where there are no special sources of danger.' "

In *Armstrong v. Portland R. Co.*, 52 Ore. 437, 97 Pac. 715, a situation quite similar to this was involved. The plaintiff, arising from her seat and going to the platform upon an announcement of the street she expected to alight at, stepped off the car before it came to rest, there being no invitation for her to do so. Holding that there was no negligence upon the part of the conductor, Chief Justice Bean, speaking for the court, observed:

"It clearly and undisputably shows that there was no negligence on the part of defendant, and that plaintiff was injured because she attempted to alight from a moving car, without any necessity or seeming necessity for so doing, and that she was not advised or requested to do so by defendant's servants. This was negligence of such an obvious character that the court was justified in directing a verdict against her. 3 Thompson, Negligence, § 3013.

"It is argued, however, that defendant is liable because the conductor did not notify plaintiff that the car was still in motion and warn her against the danger of her contemplated act; but the evidence does not show that the conductor knew, or had any reason to believe, that she was intending to get off the car until it had stopped.

"Plaintiff was of mature years and in possession of all her faculties, and we are not advised of any rule of law making it negligence for the conductor of a street car, under such circumstances, not to warn such a person of the danger to be apprehended in alighting from a moving car. The facts do not bring the case within the rule announced in *Smitson v. Southern Pac. Ry. Co.*, 37 Ore. 74, 60 Pac. 907. There the injured party was a passenger on a steam railway. As the train approached her destination it stopped, and she was invited by one of the company's servants to alight; but, as she was in the act of doing so the train suddenly started, injuring

her. The facts, therefore, are entirely different from those shown in the present case. Here there was no invitation or request to plaintiff, from any employe or agent of defendant, to alight from the car, and they had no reason for supposing or believing that she would attempt to do so, while the car was in motion. There is, therefore, no ground upon which the defendant can be charged with negligence by reason of the failure of the conductor to notify plaintiff that the car was still in motion, or that she was liable to be injured if she attempted to alight before it stopped."

These views find support in *Illinois Central R. Co. v. Massey*, 97 Miss. 794, 53 South. 385, and *Burton v. Wichita R. & Light Co.*, 89 Kan. 611, 132 Pac. 183.

The decision principally relied upon by counsel for respondent, and which probably lends as much support thereto as any in the books, is that of *Blue Grass Traction Co. v. Skillman*, 31 Ky. Law 480, 102 S. W. 809. That case is possibly distinguishable from the one before us in that the conductor could plainly see that the plaintiff was going to get off while the car was in motion. If not so distinguishable, we are inclined to view that decision as not being in harmony with the weight of authority. However, the Kentucky court in the later case of *Louisville R. Co. v. Furnas*, 155 Ky. 470, 159 S. W. 994, expressed views apparently quite in harmony with the decisions we have above noticed.

In *Elwood v. Connecticut R. & Lighting Co.*, 77 Conn. 145, 58 Atl. 751, we have a decision which it may be said is not in harmony with our conclusion here reached. That decision, however, seems to proceed upon the theory that the facts showed an invitation on the part of the conductor to the plaintiff to alight while the car was in motion. In *Cooper v. Georgia, C. & N. R. Co.*, 61 S. C. 345, 39 S. E. 543, we have a condition where there was an acceleration of the speed of the train instead of its coming to a stop, as it was apparently doing at the time the plaintiff stepped off. The facts of that case may also be well construed as an invitation on the part of the railway company's servant to the plaintiff to step off.

In *Long v. Red River, T. & S. R. Co.* (Tex. Civ. App.), 85
S. W. 1048, there were also involved facts which might well
be construed as an invitation to the plaintiff to get off the
moving train.

We are of the opinion that it must be held, as a matter of
law, that appellant's conductor was not guilty of negligence
in failing to notify respondent that the car was still in motion
when she stepped off. The judgment is reversed and the case
dismissed.

HOLCOMB, MOUNT, and MAIN, JJ., concur.