Merrimack, }
Nov. 1, 1927. }

AMY J. WRIGHT *v.* BOSTON & MAINE RAILROAD.

*Robert W. Upton* and *John M. Stark* (*Mr. Upton* orally), for the plaintiff.

*Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendant.

ALLEN, J. The plaintiff was hurt in getting off the car at her destination. The car benches extended across its width and exit was at the side of the car along which two steps ran its length. The plaintiff and her brother were the only occupants of the bench where they sat. They were at its left end and to leave the car it was necessary to move to the right end of the bench to reach the exit. There were two other passengers on the car, and all were intelligent adults. The conductor at the time was looking for some transfer slips kept in a box, and did not see the plaintiff when she undertook to leave. There was a practice of warning passengers not to leave the car while it was moving when any were seen in the undertaking.

Different witnesses gave varying versions of the accident. The plaintiff testified that the car had stopped before she arose from her seat and that it started again without warning as she was in the act

of stepping down from the floor of the car to the nearer step. The jury were instructed to give her a verdict if this was the fact. Other witnesses testified that she left her seat and undertook to leave the car before it stopped. The jury were instructed to find negligence in that situation if there was any unreasonable movement in bringing the car to a stop. It is the plaintiff's claim that if she left her seat before the car stopped and even if the car was properly brought to its stop, yet negligence might be found in the conductor's failure after she arose from her seat to warn her not to leave the car until the stop should be fully made.

Assuming that the plaintiff undertook to leave the car before it stopped, in so doing she acted either with knowledge that it had not, or in the mistaken belief that it had, stopped. The latter alternative might be found. There was evidence that the car was moving slowly and being brought to a stop in a proper manner. New passengers entered the car before it stopped. The accident occurred at night when the visibility of objects and conditions might be affected. A finding that the plaintiff's testimony that the car had stopped before she undertook to leave it showed that she so thought at the time would have reasonable basis for its support, although it should also be found that the car had not thus stopped. And such a mistake if made was not necessarily negligent.

If she knew the car was moving, there was no duty to warn her. In that situation her appreciation of the danger was equal to the defendant's. The danger of leaving a moving conveyance is a matter of common knowledge, and there was no duty to warn her of a danger which she knew as much about as the defendant. If it was careless not to warn her, it was equally careless on her part for her to do as she did with knowledge that the car was moving. "The fact that one person is injured and the other is not — that one is employer [or carrier] and the other employee [or passenger] — will not authorize the imposition of different rules of care as to matters of common knowledge about which each has equal information." *Ahern* v. *Company*, 75 N. H. 99, 102.

Nor does the practice of warning passengers seen to undertake to leave a moving car serve to show or establish a duty to warn such passengers when they know the car is moving. The law prescribes no requirement of protection by warning for such conduct, and if the defendant had a practice of giving warning in such cases, it was not liable for its failure to do so in a particular instance. The practice was no evidence of a duty to those who intelligently understand the

danger, since no such duty exists. The duty to warn at best only applies to persons acting carefully and without appreciation of the danger and to persons whom the law does not require to use care.

The plaintiff was therefore entitled to no warning unless, without being careless, she mistakenly thought the car had stopped when she undertook to leave it, and the question arises whether in such a view of the facts it might be found that warning should have been given. If she was entitled to warning, it was by reason of there being some probability sufficient to call for the warning, from the conductor's viewpoint if he had seen her, that her action in leaving her seat and going to the right side of the car was with the intention to leave the car before it stopped and in the exercise of care. From the conductor's viewpoint nothing took place to lead him to think, if he had been watching, that she was undertaking in due care thus to leave the car. The possibility that she thought the car had stopped before it did was too slight a probability to require ordinary care to anticipate it. Such a requirement would mean that all passengers on open cars should be warned if they leave their seats before the car stops. While it may be said that the purpose of her action was not wholly free from doubt and that so far as appeared she might or might not think the car had stopped, the chance that she had made a mistake free from negligence was not great enough to call for its reasonable foresight. The fact of motion or rest is readily and almost invariably realized except under rare conditions, and that one should be expected to anticipate the plaintiff's failure to realize it would call for more care than can be regarded as ordinary. While, as already stated, the plaintiff in view of the special conditions might be found to have made a mistake free from negligence, yet that another should have anticipated that she was making or might be making a mistake of that character seems clearly a requirement approximating absolute care and beyond any ordinary range of the exercise of care. While anticipation may be required if there is some general probability of danger sufficient to call for action without foresight of the particular way in which it may arise, yet here the danger to the plaintiff which it is claimed should have been anticipated could only arise from her mistaken belief free from negligence that the stop preceded her departure. There was no evidence that the chance that the plaintiff, giving reasonable attention to her situation, would be misled into an erroneous belief that the car's stop took place before it did was so great as to require the conductor to be on guard for it.

If the plaintiff's testimony that she was thrown from the car as

she was stepping down from its floor can be reconciled with a finding that she had abandoned a purpose to leave the car on discovery that it was still in motion, there was nothing in her stationary position at the side of the car to show any need of warning. Argument is advanced that there may have been some irregularity of movement in the stopping of the car which the conductor should, and the plaintiff might not, have expected. The instruction that negligence in such movement would entitle the plaintiff to a verdict unless she also was negligent limits the consideration of the point to a proper and reasonable irregularity of movement. Such a movement is merely one of the items making up the general danger of leaving a moving conveyance, of which the plaintiff had knowledge. Whether she knew the reasons why it was dangerous as well as the defendant is not important, so long as she knew it was a dangerous thing to do or incur. There was substantial equality of knowledge of the nature and extent of the danger. The common knowledge is that one takes his chance in occupying an exposed position as well as in leaving a moving conveyance, for the reason that safety is not assured. To differentiate between knowledge of the precise character and causes of the danger and a general knowledge of it would be a refinement of discrimination not reasonably to be adopted.

Nor does the practice of warning passengers seen to undertake to leave a moving car serve to show that such an undertaking in a proper manner should reasonably be anticipated. It is true the practice shows some practice of passengers to take such action. To what extent they thus act may not be stated as a matter of judicial notice, although it may be said that while it is comparatively an infrequent occurrence, it is more likely to happen when the car is nearing its stop and going slow. But it may also be said that the occasion to warn usually arises when the passengers fail or are unable to use care in looking out for themselves. When it is considered that the only passengers here were four intelligent adults, it cannot be said that there was any reasonable occasion to expect that warning might be required for their departure in a proper manner, if it may be said that there was due them any general oversight as a body as well as a particular oversight of each one.

The argument that the ordinary standard of care required of carriers towards passengers is a high one is not overlooked. The requirement is recognized because the passengers can do but little, while the carrier must do nearly everything, for their safety, and because of the dangers of carriage. The reasons therefore lose in force

and weight in a case as here of a situation in which the passenger was not helpless but was capable of looking out for her safety and acted apparently on her own intelligent volition. While the general duty of protection prevails while the relation of carrier and passenger subsists, the protection required is obviously greater in respect to matters wherein the passenger is helpless or of which he may be expected to be ignorant. In this respect the case may be distinguished from cases of which *Burke* v. *Railroad*, 82 N. H. 350, is an example.

It may also be argued that as between an open car with a separate exit for each bench and a closed car with exits only at the ends, the conductor may give more oversight and assistance to passengers in the act of leaving when the car is a closed one, and that this difference might be found fairly to require greater diligence in warning passengers on an open car as being left more to their own resources. But granting the validity of the argument, there was nothing in the plaintiff's appearance or conduct which fairly suggested that she should be watched to see that she left the car properly. As has already been said, so to find would mean a requirement that all passengers should thus be watched, and such a requirement is clearly beyond any standard of care ordinary men would adopt and practice. It is to be assumed that passengers will act in reasonable regard for their safety, and precaution is required to meet, not all. contingencies, but only such as men acting reasonably look out for.

There appear to be no previous cases in this court in which the question here presented has required decision. The case of *Douyette* v. *Railway*, 69 N. H. 625, cited by the defendant in support of the argument that a passenger undertaking to alight from a moving car is alone responsible for the consequences of his act, does not raise the point of a duty to warn against the act. The evidence was not transferred and hence no evidence of a duty to warn was presented for consideration, even had it been claimed. In *Lewis* v. *Railroad*, 79 N. H. 165, it was held there was no evidence of a duty to anticipate that the plaintiff's intestate would undertake to board a moving train, but as he knew it was moving when he made his attempt, the situation is not parallel with that presented here. In *Wheeler* v. *Railway*, 70 N. H. 607, and in *Kambour* v. *Railroad*, 77 N. H. 33, the plaintiff's inability to take care of himself was known to the defendant, and in both cases it appeared that they did not "appreciate the risk to which their conduct exposes them." Neither of these cases therefore covers the point here in issue. But the weight of authority appears to accord with the result here reached. *Mabry* v. *Company*,

214 Mass. 463; *Elger* v. *Railway*, 226 Mass. 84; *Gipson* v. *Company*, 142 La. 497; *Armstrong* v. *Railway*, 52 Ore. 437; *Miller* v. *Railroad*, 158 N. Y. App. Div. 808; *Sumner* v. *Company*, 89 Wash. 55; *Hutchinson* v. *Company*, 36 D. C. App. 251; *Ashtabula &c. Co.* v. *Holmes*, 67 Oh. St. 153; *McCoy* v. *Railway*, 104 Neb. 468; *Louisville Ry Co.* v. *Furnas*, 155 Ky 470; *Burton* v. *Company*, 89 Kan. 611. See also 10 C. J. 926, s. 1350. In all or nearly all of the cases cited by the plaintiff there were special circumstances making the passenger's undertaking to leave the car apparent and justified.

In her movement in arising from her seat and going to the side of the car there was no indication that the plaintiff was intending to leave the car before it stopped. The conductor did not see her at any time during her undertaking. As he cannot be found at fault for not seeing and warning her, the questions of the opportunity to give her seasonable warning if she had been seen after reaching the exit and of the application of the last chance doctrine if her conduct was negligent accordingly do not arise.

In arguing to the jury defendant's counsel referred to one of the plaintiff's witnesses who had once been convicted of burglary as "a man who don't hesitate to break and enter and steal." On the exception it is argued that the language constituted an assertion that the witness if not an habitual thief, at least had the propensities of one, and the statement that he did not hesitate to commit the crime is challenged as unsupported by the evidence. If the language used may be construed as the plaintiff claims, it is not the only construction which jurors might give to it, and it may preferably be regarded as only a forceful and vigorous assertion that the testimony of one who has committed such a crime is not to have his word trusted. Following the objection defendant's counsel made specific reference to the testimony on which the argument was based, and the more natural construction of the statement deprives it of such force as the plaintiff seeks to attach to it. Hesitation or the lack of it in committing a crime must be of negligible significance in the use made of the fact of the crime as impeaching credibility, if strict and critical analysis and definition of the word were to be made regardless of the context. But it does not appear probable, taking into account the context, that the jury understood that any claim of the witness' criminal conduct or disposition was made beyond what the evidence tended to show.

*Judgment on the verdict.*

BRANCH, J., did not sit: the others concurred.